# Bishop *against* Reed.

A plaintiff in ejectment cannot recover upon a legal title obtained from the defendant, in pursuance of a contract, the consideration of which had entirely failed; and which, if the title had not been actually made, it would have been against common justice to enforce.

ERROR to the Common Pleas of *Dauphin* county.

William S. Bishop against William Reed, Rody M'Gee, Calvin Holmes, and Sarah M'Nutt. This was an action of ejectment for a lot and two houses in the town of Millersburg, which the plaintiff claimed by virtue of a deed from Reed and M'Gee, (the other defendants were tenants), dated the 9th of July 1840 — consideration $850. It was acknowledged on the day it bore date by both Reed and M'Gee, and left with the scrivener, who was also a justice of the peace, to be taken by him to obtain the signatures and acknowledgment of the wives of the grantors; who executed and delivered the deed, but at what date was not certain. Reed set out for Erie about the 20th of July, and the acknowledgments were taken after that and before his return, which was on the 3d of August. The deed was never recorded. The defendants offered and proved that Bishop and A. C. Ramsey had taken a contract to construct two locks, Nos. 70 and 71, being

the outlet locks from the Erie canal into Lake Erie. Their contract was dated the 20th of April 1840; but at the foot, above the signatures, was written—" This contract not to be binding on the commonwealth until approved by the board of canal commissioners." It was approved about the 13th of June. It contained the following clauses: " The contractors do further agree, that they will not *re-let* or *transfer said contract or any part thereof*, to any other person or persons whatever; and that they will personally superintend the work during its progress." " It is further agreed between the said parties, that in case the work upon this section shall not be commenced within 40 days from this date, or if at any subsequent period the said contractors should in the opinion of the superintendent or engineer refuse or neglect to prosecute the contract, &c. &c., or shall *sub-contract* or *re-let said lock or lock section or any part thereof*, or shall not give personal superintendence to the work, the said engineer shall have power, with the consent of one of the canal commissioners, to determine that this contract has been abandoned, and such determination shall put an end to his contract, &c. And the superintendent may immediately proceed to dispose thereof in the same manner as if it had never existed."

A. C. Ramsey, the partner of Bishop, had been written to by the superintendent, urging him to come on and make some satisfactory arrangement, but telling him he had taken the contract too low—instead of which he sold his share in the contract to a man called Martin. The engineer had also written to Bishop. Bishop knew that Ramsey had sold to Martin. On the 8th of July he was told that it was said at Erie his contract would be at an end unless he came soon. On the 9th he closed his bargain with Reed and M'Gee, assigned his contract, and got their deed for the two lots and their note for $150, making together $1000, the price they were to pay for the contract. The scrivener says: " It was stated they were to get the work on the contracts; the matter was arranged before they came to my office. I understood the contract was going on." Another witness, one of those chosen to fix a price on the house, says: " Bishop said he would insure them to get the locks." An engineer in another part of the state mentioned to the parties the clause against selling or assigning contracts. Bishop said, " it had been customary, there would be not much doubt about their getting it." This was about the time the assignment was made. This witness also proved, that " about ten days after this, M'Gee started to Erie, in as short a time as a man could prepare for such a job.' When M'Gee got to Erie, he found the contract had been declared abandoned, and was advertised to be re-let on the 4th of August; and he sent a man with a letter for Bishop, who went to Erie, and again to see the canal commissioners at Lancaster, but could not get the contract back. It was also proved that after this Bishop said it was a hard case;

[Bishop v. Reed.]

he thought they would have got the work, and he thought he would give back the property, and did give up the note for $150.

All the evidence proving fully these facts, was objected to, but admitted, and was to be considered as if a bill of exceptions to each, except the scrivener, who in fact proved the substance of the whole case; but others the same facts more precisely and specifically.

The court below (Parsons president) was of opinion that the plaintiff was not entitled to recover, and so instructed the jury.

*M'Cormick,* for plaintiff in error. The plaintiff does not ask the aid of the court to enforce the performance of the contract, that is already executed; but he demands the fruit of a legal title. 1 *Story's Eq.* 413; 11 *Mass.* 375. There was no fraud, no concealment; the parties acted and bargained about a doubtful contingency, and the defendants agreed to take the risk. It is no argument against the plaintiff's title, that subsequent events deprived the defendants of the benefit of the contract assigned to them; it might as well be urged as a defence that it was occasioned by flood or fire. 4 *Rawle* 370; 5 *Johns.* 33. But it is said that the assignment of the contract was forbidden: as to this, the parties were *in pari delicto,* and the defendant cannot avail himself of it. 2 *Kent* 467; 1 *Serg. & Rawle* 42; 1 *Binn.* 519; *Shep. Touch.* 223; 4 *Kent* 465; 2 *Paige* 84; 2 *Penn. Rep.* 112.

*Hamilton Alricks,* and *Johnson,* (attorney-general), *contra.* The plaintiff agreed to assign his right to the contract to the defendants; this agreement was made in the common mistake of the parties; it was not the subject of assignment, and therefore the consideration of the contract entirely failed. And although the deed was made and delivered, under such circumstances Chancery would decree a reconveyance. 2 *Binn.* 133; 1 *Story's Eq.* 419; 1 *Con. En. Ch. Rep.* 223; 3 *Serg. & Rawle* 331; 3 *Watts* 32; 8 *Watts* 492; 9 *Serg. & Rawle* 80; *Pow. on Con.* 122.

The opinion of the Court was delivered by

HUSTON, J.—The exception to admitting the evidence was not urged here. In the country from which our ancestors came, and from which we took the substratum of our jurisprudence, it was once the law, and to a certain extent is yet, that a deed or writing under seal proved a consideration; and nothing could be averred against this. This in a court of law; but after a judgment in a court of law, the defendant could go to the other end of Westminster Hall, and on making out a case of fraud, want of consideration, &c., could obtain a perpetual injunction against any execution of the judgment at law; or if the recovery was of land in ejectment, he might be quieted in the possession, and compel the plaintiff to deliver up his deed to be cancelled. The system

and principles of the equity courts are very complete. Fraud in both courts, if by their practice it can be reached, vitiates every contract; but in many cases relief is only to be had in Chancery. It investigates and relieves against misrepresentation, against contracts obtained by reason of any undue advantage—of the breach of confidence, of mistake under which one party laboured, and against contracts which could never have been made, unless both parties had been greatly mistaken; or, in other words, against contracts honestly made on a mistake of one or both, and which, on discovering the whole facts, it is against common justice to attempt to enforce. The law and the cases on this subject, are collected with skill and diligence by Judge Story, in his Treatise on Equity, and will be found from page 127 to 149.

I have stated the course of proceeding in countries where there are distinct courts of law and equity, to show that decisions in a court of law in those countries do not show what is the event of a cause in which one party produces a formal deed and the other seeks to avoid it by proving actual or legal fraud, imposition, mistake, undue advantage, or want of consideration. In this state the same court disposes of the whole case, and the result of a trial is the same as that of a suit in both courts in other countries. The rules as to parol evidence applied to written documents, have no application to cases in which relief is sought by proving any of the matters in equity above stated. Fraud, imposition, mistake, or total failure of consideration, must be proved by parol wholly or partly, or remain undetected.

I do not know how it happened, but it did happen that in the Common Pleas this cause was discussed by both parties as a contract prohibited by Act of Assembly. It was conceded here that there is no Act of Assembly on the subject; the form of the contracts is that adopted by the canal commissioners, and agreed to and sanctioned by the hands and seals of the parties; and it was proved by one of the canal commissioners, that although formerly underletting was permitted, the clause against assigning was in 1840 and since rigidly enforced. In this court the argument was on much broader ground. The contract was here attacked as void on many grounds—fraud, misrepresentation, concealment of the facts that Ramsey and Bishop had been urged to come on to commence the work, and the total mistake of both parties, or at least of Reed and M'Gee, that the contract had been declared abandoned.

There has been much written and more said as to whether a mistake of law will be ground for rescinding a contract. I have never known a case in which there were not other circumstances than mistake of law brought to the consideration of the court. Chancellor Kent supports the doctrine, but confines it to cases in which there is a full knowledge of all the facts and circumstances. 6 *Johns. Ch.* 169, 170. Judge Story seems to support the naked

proposition, but says equity will relieve where there is an admixture of other ingredients going to establish misrepresentation, imposition, undue confidence, undue influence, mental imbecility, or that sort of surprise which equity uniformly regards as a just foundation for relief. 1 *Story* 132, 3. Modern cases seem to carry the exception further, to cases in which a person has been induced to give up a portion of his undisputed property and gets nothing in return. 1 *Sim. & Stewart* 555, and cases cited 1 *Story* 139, as to mistake. Where parties have presupposed some facts or rights to exist as the basis of their proceeding, which in truth did not exist, such contracts made in mutual error, under circumstances material to their character and consequences, seem on general principles invalid. 1 *Story* 149, and notes. Lord Hardwicke, in *Chesterfield* v. *Jansen*, arranges among contracts which will be relieved against, such bargains as no man in his senses and not under delusion, would make on one hand, and no honest and fair man would accept on the other hand.

The case of *Quick* v. *Stuyvesant*, (2 *Paige* 84), is full to the principle contended for by the defendants in this case. Parties had agreed and mutually conveyed to each other certain parcels of land, intending to lay it out in lots and streets, on what is now part of New York. In 1807 the legislature directed streets to be laid out in a manner entirely different from that proposed. The chancellor directed reconveyances. " In all matters whatever," says he, " as well as matters of law, the end is the capital circumstance, and the means are regarded so far only as they contribute to that end. When a deed or obligation is sought to be made effectual in an event which is unexpected to both parties, a Court of Equity denies its authority. The party seeking to enforce it is unjust and inequitable in his demand, and this furnishes a valid objection to the adverse party. Where, from the defect of the common law, want of foresight of the parties, or mistake, or accident, there would be a failure of justice, it is the duty of this court to interfere and supply the defect or furnish the remedy."

In this state we do not turn a party round to another court to obtain what plain and natural equity requires; and we say, on the facts adduced in this cause, admitting them to be as the plaintiff alleges, the judgment in the court below is affirmed.

Judgment affirmed.