Maguire *v.* Wheeler (et al., Appellant).

Argued April 25, 1930. Before FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

*Ralph B. Evans,* for appellant.—The evidence was not sufficient to justify a finding that the conveyance to the preferred realty company was obtained by fraud.

A deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration and will, nevertheless, operate to convey title: Cook v. Trimble, 9 Watts 15; Perry v. Scott, 51 Pa. 119; Krebs v. Stroub, 116 Pa. 405.

The mere breach of a contract does not amount to fraud, nor is it proof of fraud existing at the time the contract was made, and neither knowledge of one's inability to perform a contract nor an intention not to perform it will make the transaction fraudulent: Humphrey v. Brown, 291 Pa. 53; Miller v. Fulmer, 25 Pa. Superior Ct. 106.

The evidence does not sustain the court's conclusion that no rule to file a replication was served on complainant.

*William A. Carr,* with him *Sidney L. Krauss,* for appellee, cited: Bishop v. Reed, 3 W. & S. 261; Dela-

mater's Est., 1 Wharton 362; Dubois v. Water Works, 176 Pa. 430.

OPINION BY MR. JUSTICE SADLER, May 27, 1930:

Mary Maguire advanced to her brother-in-law, Wheeler,—who was also her attorney and confidential adviser,—$30,000 for use in the construction of the Belmont Theatre, located on 52d Street, in the City of Philadelphia. Subsequently, she paid to him additional sums for the same purpose. To carry out his plans, he incorporated three companies, the first known as the 52d Street Theatre Company, another the West End Realty Company and the third the Preferred Realty Company, one of the defendants in the present case. The stock of all three, with the exception of a few shares nominally held by others for voting purposes, was owned by Wheeler.

He acquired ownership of the Belmont Theatre property on August 22, 1912, subject to a yearly ground rent of $4,410, placing the title in the name of one McAlister, who in turn executed a mortgage to the 52d Street Theatre Company for $75,000. The grantee then conveyed the property to the West End Realty Company, another of Wheeler's corporations, and, on April 15, 1913, the holder of the mortgage above referred to assigned it to the plaintiff as security for the advances made by her, executing an instrument declaring the same was to be held as collateral for the sums loaned. Wheeler, as president of both corporations, the stock of which he owned individually and on behalf of both companies named, delivered a "memorandum of understanding" on December 10, 1914, setting forth that there was due at that time $30,000, for which the mortgage should be held as security, as well as for future advances.

He caused various transfers of the property to be made to straw parties and to himself until December 13, 1914, when he conveyed the premises to the Preferred Realty Company, subject to the ground rent and mort-

gage mentioned. Later, in the same month, further advances being refused, Wheeler advised Miss Maguire to foreclose the mortgage, but before action was taken the owner of the ground rent had proceeded to collect the arrears then due. As directed by Wheeler, she purchased the property at sheriff's sale for $18,000, paying $6,000, giving her receipt as assignee of the mortgage for the balance, and a deed was executed naming her as grantee, subject only to the ground rent, though possession of the conveyance was retained by her attorney.

At the request of Wheeler she thereafter conveyed the property to the Preferred Realty Company upon the representation that the entire stock then owned by him, except the shares held for voting purposes, would be immediately transferred to her, and plaintiff's ownership be thus protected, she to be made treasurer of the corporation so that all moneys received would come into her possession. Pretending that it was necessary to satisfy the sheriff, the attorney secured the cancelled checks representing the major part of the moneys advanced, declaring that the same must be immediately deposited at the former's office. The further false statement was made that the immediate execution of the deed was necessary so that an advantageous lease of the theatre could be consummated. Wheeler failed to deliver the stock, and refused to do so upon demand.

Thereupon the plaintiff brought an action of ejectment to recover the property, alleging that the title had been obtained by misrepresentation. A demurrer to her statement was sustained on the ground that there was no averment of the existence of any confidential relation with Wheeler who had acted for her, or that he was the owner, or in a position to deliver the stock, and that no facts indicating fraud in securing the deed had been sufficiently set forth. For these reasons this court affirmed the judgment on appeal (Maguire v. Preferred Realty Co., 257 Pa. 48), but, in the opinion filed, it was

said: "We feel, however, the plaintiff should be placed in such position that the present judgment will not be taken as precluding her from properly asserting her alleged rights in some other action or proceeding where both the realty company and Mr. Wheeler are included as defendants."

This decision was handed down on March 5, 1917, but the record was not remitted to the lower court until more than ten days thereafter. On the 29th of the last mentioned month the present bill in equity was filed against the Preferred Realty Company and Wheeler as defendants, alleging the confidential relation, the ownership by him of the stock of the Preferred Realty Company, the fraud in securing the execution of the deed, and asked that the same be set aside. On March 6th, the day after the judgment in the ejectment proceeding was rendered by this court but before the record was returned, Wheeler caused the Preferred Realty Company to deed the property to Frank E. Dawson without consideration, in an attempt to carry out his scheme to cheat the plaintiff, as the court has found. Within a month he had Dawson convey the property to Harry Dederick, and, on the same day, it was again conveyed to William Dederick without the payment of any sum. These parties held simply for the benefit of Wheeler, and the chancellor has found the transfers were obvious attempts to further the plan devised by Wheeler to defraud his sister-in-law. All these persons were subsequently joined as parties defendant in the bill to compel a reconveyance.

With the bill still pending, Wheeler began further negotiations in 1919 for the sale of the property to one Walker, also a straw man. He employed Simkins, an attorney, to act for him, and the latter was fully informed of the fraud averred in the bill in equity, and personally had interviews with Miss Maguire endeavoring to secure a release of her interests. In the course of his investigation he discovered that no replication had

been filed to the answer in the equity proceeding which denied the fraud. He suggested to Wheeler that the plaintiff might lose her right to prove the true facts essential to the relief prayed for, if a rule to file such pleading was entered and there was a failure on the part of the plaintiff to promptly act, for, under Rule 46, as it then stood, such an omission, after ten days' notice, would result in an abandonment of the right to traverse the matters alleged in the answer.

Wheeler, following the plan outlined, caused his attorney, Katz, to enter a rule which he claims an outside party served by leaving a copy at the residence of the plaintiff. The court has found that no such paper was in fact legally served. All of this was prior to the making of a contract with Walker for the sale of the property. Thereafter, the latter entered into an agreement to buy with full knowledge of all the facts. His attorney, Simkins, then made application for title insurance, which was not granted in view of the pending bill, except on condition. The court held that the knowledge of counsel for the grantee, as to the actual facts, was full and complete, and that Walker, now also joined as a defendant, was not a purchaser for value, depending upon the record of the case for his knowledge of its legal status, when he accepted a deed.

The chancellor found Wheeler was Miss Maguire's attorney as well as her confidential counsellor and adviser, and that in the transaction he had induced the complainant to sign the deed to the Preferred Realty Company through fraud and deceit, without consideration, and therefore that the conveyance executed by her was fraudulent, void and of no effect, as were the intermediate deeds and the one made thereafter to Walker. The decree directed the latter to convey the property to the plaintiff, subject to the ground rent, and that plaintiff should hold title as security for payment to her of the sum of $42,552.16, with interest from January 16, 1916, and costs. It further authorized the

plaintiff to issue an execution and sell the land for the debt so fixed if that amount was not paid within one month.

It will be noticed first that the previous decision in the ejectment proceeding was not conclusive of the right now asserted by the plaintiff. The defects then justifying the demurrer do not appear in the bill of complaint filed here. It is expressly averred in this proceeding that Wheeler was the attorney and confidential adviser, was the owner of all of the stock of the Preferred Realty Company, with the exception of the shares transferred to others for voting purposes; and the circumstances plainly showing the fraud perpetrated were detailed at length. The subsequent transactions,— by which Wheeler endeavored to escape from the effects of his wrongdoing and consummate his evident purpose to cheat the complainant, by conveyances without consideration to and from third parties,—were set forth, and the facts averred were found on competent evidence to be true, justifying equitable relief.

It is urged by appellant that, since the deed of Mary Maguire was intentionally executed and passed title, though there was a failure of consideration in that Wheeler declined to carry out his understanding, therefore she is limited to an action at law for the loss sustained. It is true that a conveyance will not generally be invalidated by reason of a total or partial failure to comply with his agreement, as by neglect or refusal to pay the sum agreed upon (18 C. J. 168; Krebs v. Stroub, 116 Pa. 405), for in such case the plaintiff has a remedy based on his contract to recover. But such lack of value is to be considered in connection with other circumstances in determining whether fraud was practised: Pusic v. Salak, 261 Pa. 512. Mere promises to do something made at the time of executing a contract, and not statements of existing facts which are untrue, do not in themselves constitute fraud, though they are not

subsequently complied with: Humphrey v. Brown, 291 Pa. 53; Grove v. Hodges, 55 Pa. 504.

In the present case there is more than a failure to perform a promise and to pay a consideration agreed. Here, the parties bore the relation of attorney and client, and the fraudulent acts of Wheeler to secure advantage to himself were prima facie fraudulent: 6 C. J. 686. The conveyance in this case was not the ordinary one transferring title, but the arrangement, as represented by Wheeler, was to be a mere change in the form of control, the plaintiff receiving the stock of the realty company, practically all owned by Wheeler, and to which the land was transferred, in lieu of retention of the record title, so that an advantageous lease could be made, but without altering the real ownership of the grantor. There was a total failure of consideration and ample evidence, in addition, of fraud, imposition and false representations, which justified the setting aside of the deed: Bishop v. Reed, 3 W. & S. 261; Dubois v. Dubois City Water Works Co., 176 Pa. 430; Stephen's App., 87 Pa. 202; Wagner v. Fehr, 211 Pa. 435. Where the person making the promise under such circumstances intended at the time not to perform it, thus fraudulently making use of the promise as a device to procure the contract or deed, equity will grant relief (9 C. J. 1183; Williams v. Kerr, 152 Pa. 560), and that is the situation which is now presented.

Appellant further contends that complainant lost her right to traverse the facts denying fraud, as set forth in the answer, since she failed to file a replication when ruled to do so. The court found there was no sufficient evidence to prove the service of any such paper, and that it was not made in fact. The evidence amply justified this conclusion. The rule referred to was signed by Katz, attorney for Wheeler and the Preferred Realty Co., but the outsider, who was claimed to have delivered the document, knew no such person. The envelope supposed to contain the notice was given to him by Wheeler

and the bearer did not know what it contained. It was at Wheeler's request that he made an affidavit that he had left the writing given him with an adult person at the dwelling house of Miss Maguire, but as to its contents he was entirely ignorant. He stated he had never looked at the paper in the envelope, did not know whether it was signed by the attorney, and, although swearing it was a copy, had never seen the original. It may also be noted that counsel for the plaintiff subsequently filed a replication without knowledge of the supposed previous rule. Though the objection now interposed was raised at the hearing and overruled, the case was tried upon its merits and decided by evidence practically uncontradicted. An exception to the receipt of evidence on the ground suggested was taken, but is not the basis of an assignment, the only error referring to the matter being the fifth, which complains of the twenty-sixth finding of fact, wherein the trial court found no such paper was ever served.

That a just conclusion was reached in this case is evident. All of the essential facts, as heretofore stated, were found by the trial judge and approved by the court in banc. A reading of the testimony shows ample support for all of the findings and convinces us that there was an unconscionable attempt to defraud the plaintiff. She established her right to relief, and the evidence shows that no intervening innocent parties will be injured by granting it. The purchaser, Walker, did not depend upon the entry on the equity docket referred to, but relied on knowledge of the actual facts, of which he was informed by his attorney after investigation.

The decree of the court below is affirmed at the costs of appellant.