McCreary *v.* Edwards, Appellant.

Argued March 14, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank S. Hughes,* and with him *Chester H. Ashton,* for appellant.

*G. Mason Owlett,* and with him *Charles G. Webb,* for appellee.

OPINION BY PARKER, J., April 23, 1934:

The purpose of the bill filed in this case was to annul a deed for real estate and to compel a reconveyance of the property for alleged fraud on the part of the grantee.

The bill alleged that DeWitt D. Stubbs, 87 years of age, in poor health and needing care, lived alone near the defendant, Mary H. Edwards, in the town of Wellsboro; that Mrs. Edwards represented to him that he could live in greater comfort in her house where she would care for him, and that if he would convey the land in dispute to her, she would enter into a written agreement whereby she would undertake to arrange comfortable quarters for him in her house and would support, care for, and maintain him during the remainder of his life; that Stubbs conveyed the land to her on March 20, 1930, and thereupon Mrs. Edwards refused to execute an agreement and neglected to provide for him until his death on June 16, 1930.

The chancellor's findings of fact intended to support the conclusion that there was fraud were as follows: "The evidence relating to the deed and the consideration for it is circumstantial, but we believe it fairly establishes as a fact that the deed to Mrs. Edwards was made in consideration of her promise to take care of the grantor in her own home, which promise was repudiated after the deed was made and delivered to her ...... The promise, if made with no intention to carry it out, was originally fraudulent; and in any event, through failure to perform, there was such a

failure of consideration as with the attendant circumstances clearly infers fraud." He then concluded that, as a matter of law, the plaintiff was entitled to the relief prayed for.

There was some variance between the allegations and proofs in that there was no suggestion in the bill that the fraud consisted of making a promise that defendant did not intend to carry out, and the bill did not set out other facts from which a fraudulent scheme to deprive the grantor of his property could be inferred. The chancellor depended for his legal conclusion largely upon such fraudulent intent and the existence of "attendant circumstances" from which fraud could be inferred, without finding as facts any such "attendant circumstances."

Passing over any variance between the pleadings and the evidence and the apparent insufficiency of at least some of the findings of fact, we will refer to the evidence for the purpose of ascertaining whether there was sufficient proof to sustain a finding of fraud on the part of the defendant. It appeared from the undisputed evidence that Stubbs was old, in feeble health, and required care, but there is not any evidence of mental incapacity except such as might be inferred from his age. The will under which plaintiff claims the premises was dated January 1, 1930. Mrs. Edwards lived adjoining Stubbs for a number of years, cooked his meals for him, sent them to his house, and performed other services for him. On March 20, 1930, Stubbs sent for his own attorney and directed him to draw a deed to defendant for a house and lot. The attorney prepared the deed, took a deputy recorder to the house and had it acknowledged, when Stubbs directed him to record it and paid for the recording. Frank Drumader, the principal witness for plaintiff, was present on that occasion and the defendant was not. The attorney testified that there was

not any talk on the part of Mr. Stubbs that he was making the deed in consideration of care or maintenance "or anything of the kind," and this was not contradicted. Two witnesses testified that Mrs. Edwards stated that she had been paid for the services that she had performed for Stubbs. The only additional evidence offered to support the allegation of fraud was a letter to which we will refer later and the testimony of Frank Drumader. He testified: "Q. Prior to that time had you known of negotiations between Mrs. Edwards and Mr. Stubbs? A. Yes, sir, Mr. Stubbs had told me." He then related the following conversation which he had with her prior to the making of the deed: "She said, she called me in and showed me the room, she had had Mr. Stubbs over and showed him the room, and this was the room he was to have. She showed where the water closet was, and it was handy for him, and so on, and said she wouldn't agree to keep him unless she got the deed for the house, she wanted that first before she would make any agreement." After the deed was made and delivered, she called Drumader to the house again. He then testified: "She said she couldn't take him. I said if you are not going to take him as you agreed, —you ought to give back the deed, and she said, hadn't I ought to be considered. I said, didn't he pay you for all he got, and she said,—well yes. Well she said she couldn't take care of sick people as well as she used to, she was getting older, and he had plenty of money, he could go to the hospital. He had plenty of money to pay for it, and he could go the hospital. Q. Did she ever render him any care after the deed was given to her by Mr. Stubbs? A. Only what she had done before, she brought him his dinner. He always paid her for that." He stated that he sometimes saw change on the plate when he took the dishes back and

placed them on her porch and that Stubbs was not taken into her house.

While a wide latitude is permitted in establishing fraud, it must be proved by more than a mere preponderance of the evidence: 5 Wigmore on Evidence, §2498. "Fraud must be established by clear and satisfactory evidence, as it is never presumed. It may be proven, however, by direct or circumstantial evidence or by a combination of both": Pusic v. Salak, 261 Pa. 512, 518, 104 A. 751. Also, see Jones v. Lewis, 148 Pa. 234, 23 A. 985; Morton v. Weaver, 99 Pa. 47, 52. "Nothing short of evidence precise, clear and indubitable can be allowed to overturn a written instrument": Spritzer v. Pa. R. R. Co., 226 Pa. 166, 173, 75 A. 256.

"Mere promises to do something made at the time of the execution, and not statements of existing facts which are untrue, do not constitute fraud, though they are not subsequently complied with": Humphrey v. Brown, 291 Pa. 53, 58, 139 A. 606. Also, see Grove v. Hodges, 55 Pa. 504; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519; Lowry Nat. Bank v. Hazard, 223 Pa. 520, 72 A. 889; Homewood Peoples Bank v. Simon, 279 Pa. 118, 123 A. 726. There are exceptions to this rule. "Fraud may be predicated on the non-performance of a promise in certain cases where the promise is the device to accomplish the fraud, or where a relation of trust and confidence exists between the parties": 12 R. C. L. 257. The cases of Pusic v. Salak, supra, and Maguire v. Wheeler, 300 Pa. 513, 150 A. 882, are examples of such exceptions. While want of consideration does not prove fraud, it is a circumstance to be considered upon that question in connection with other evidence: Pusic v. Salak, supra, p. 518.

While there was positive evidence that defendant had promised Stubbs that she would take him into her

house, we may only guess as to the terms upon which she would perform this service, what she should furnish or what he should pay, and there is not any evidence that any promise that may have been made was a consideration, or part consideration, for the conveyance of the property. The plaintiff proved by his own witness, Drumader, that defendant, before the making of the deed, said she would not enter into any agreement before she had the deed. Although Stubbs chose his own attorney to make and even record the deed, not a word was said to the scrivener about any unperformed agreements that were a consideration for the conveyance. This fact is significant. Certainly there was not clear, precise, and indubitable, or even clear and satisfactory, evidence to support the finding that the deed was made in consideration of a promise to take him into her house.

Neither are we satisfied that there was no other consideration than that expressed in the deed. Undoubtedly, Mrs. Edwards rendered valuable services to the deceased up to the date of his death. While it was testified that she said she was paid, it does not appear how she was paid or what part the conveying of the property had in such compensation.

Evidently both the court below and counsel for plaintiff recognized the weakness of the first position, for they attempted to support the finding of fraud not upon a mere promise, but upon a finding that the promise was made without any intention of carrying it out, and that the "attendant circumstances" were sufficient to support the charge of fraud, relying on the cases of Maguire v. Wheeler, supra, and Pusic v. Salak, supra. The only other facts found by the chancellor relating to the subject are the age and health of decedent, and we have searched the record in vain for any testimony that would support additional pertinent findings of fact. It is true that after the deed

was made, Mrs. Edwards did not take Stubbs into her home and assigned as reasons that his condition was such that he could not be taken care of properly by her there and that it would be better for him to go to a hospital, but there is no indication that Stubbs wished to go to her house in his last illness or made any request to be taken there.

The plaintiff offered in evidence a letter written to him by the defendant on March 31, 1930, which indicates a reason why Stubbs was not taken to the defendant's house. She there wrote: "You will pardon me for writing you this morning about Mr. Stubbs. But he tells me you are his executor of his will. And here is the real situation. He is a sick man. And the doctors are not telling him what is the matter. But you can draw your own conclusions. For several days he has been having hemorrhages of the bladder and is going down very fast, and for three years I have promised to take him and take care of him in my own home, and I am willing to do what I can, as I have done all that has been done for him all winter. And I was wondering if it would not be a good thing for you to come over and see the situation, and advise, as I don't want to make any bad moves."

This letter indicates that the defendant had serious doubt as to whether it was advisable for her to take him owing to his condition into her house, and she sought counsel and assistance in solving this problem from his near relative, executor, and residuary legatee, the plaintiff. The plaintiff did not throw any light on this subject or offer to show any additional fact from which it might be inferred that the failure to take Stubbs into defendant's house was a part of a scheme to defraud him. As a matter of fact, the condition of Stubbs so progressed that he died within ten weeks. The evidence is not sufficient to show by the proper quantum of proof that the promise was

made without intent to perform it, or that it was part of a fraudulent scheme to impose upon this old gentleman. As we have pointed out, the mere failure to carry out a promise of something to be done in the future is not itself evidence of fraud, and we must find support for the allegation of fraud in other circumstances showing that the promise was but a device fraudulently conceived to take advantage of another, or perhaps was a promise made with intention that it should never be performed. It is here that the present case differs from those relied upon by the court below. In both the Maguire and Pusic cases, the transactions were saturated with fraud and there was more than a failure to perform a promise or pay a consideration, for there were there numerous items of evidence showing a plan fraudulently conceived and carried out with evil intent, a mere device to procure the deed. A conveyance will not generally be invalidated by reason of a total or partial failure to comply with an agreement, as by neglect or refusal to pay the sum agreed upon (Krebs v. Stroub, 116 Pa. 405, 9 A. 469), for in such case the plaintiff has a remedy at law based on his contract.

We cannot permit a writing, sealed and delivered importing a consideration, to be brushed aside on mere allegations of fraud and other flimsy pretexts. "It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only. To be of any avail it must be clearly proved": Morton v. Weaver, supra, p. 52.

Judgment of the lower court is reversed, and it is directed that the bill be dismissed, costs to be paid by appellee.