## Shook *v.* Bergstrasser et ux., Appellants.

Argued November 25, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Arthur O. Kleemann,* with him *James McQuade,* for appellants.

*Thomas J. Grover,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 24, 1947:

When the consideration of a conveyance is a promise to support the grantor, will failure by the grantee to perform justify rescission and cancellation of the conveyance?

William A. Shook, the plaintiff, is the father of defendant, Vesta May Bergstrasser, whose husband is the other defendant, Conrad F. Bergstrasser. Shook has a wife from whom he is separated and four other

children. Defendants were the owners of 222 Blackman Street, in the City of Wilkes-Barre, acquired by purchase in 1931, and which they occupied as their home. Plaintiff loaned defendants $4,300 at the time of purchase and took from defendants a first mortgage for that amount. On July 1, 1940, defendants, for an expressed consideration of $1, deeded the mortgaged premises to plaintiff. On the same day defendants executed and delivered to plaintiff a bond, designated as an agreement, in the sum of $4,300, reciting that plaintiff was about to re-deed the real estate to defendants and stipulated therein ". . . in part consideration therefor, the [defendants] have agreed to provide care, support, and maintenance, for and during the natural life of the said [plaintiff], in the manner he is accustomed to living, and to furnish him with medical care, attention and medicine during his illness." On the same day plaintiff (without joinder of his wife) re-conveyed the premises to defendants. The consideration was declared to be $1. The deed included the following covenant: " 'And the said grantees for themselves, their heirs, executors, administrators and assigns, hereby covenant and agree with the said grantor, his heirs and assigns, that they the grantees will provide a home for, care for and maintain the said William A. Shook, grantor, in the manner as he is now accustomed to living, for and during the term of his natural life; and the grantees further covenant that at all times, during the life of the grantor, as the necessity arises that they will provide medical care, medicines and attention for the grantor.' " On July 19, 1940, plaintiff satisfied the mortgage.

At the time of this transaction plaintiff was about 65 years of age, and according to the finding of the Chancellor was "infirm, suffering from a most inconvenient bladder ailment and partially crippled from arthritis. . . ." We note, however, that plaintiff, while living with defendants, was employed for 11 months at Berwick, Pa., apparently as a night watchman. He also owned, operated and took care of his automobile.

Defendants paid plaintiff the interest on the mortgage until June 1935. Plaintiff came to live with defendants in June 1935, but discontinued doing so in September 1936. In April 1939 plaintiff returned to live with defendants under an oral agreement to apply the mortgage interest on his board and lodging at the rate of $30 per month. This arrangement continued until July 1, 1940, when the real estate transfer and agreement was concluded as above recited. Such situation continued until March 15, 1943—a period of over 2 years and 8 months—when plaintiff ceased to live with defendants.

The cause for plaintiff's withdrawal is recited by the Chancellor: "The relations between the parties soon deteriorated. Each accuses the other of cruel and intolerable treatment. The father charges that he was persecuted, harassed, compelled to eat alone, deprived of the common comforts, a satisfactory light, a satisfactory mattress, satisfactory food or medical attention. The daughter charges that he was mean and abusive, spitefully monopolized the facilities of the home, maintained a vicious dog, and brought into the house, as a visitor, a strange woman. The accusations by each against the other were many and serious."

After an extended hearing the Chancellor found as a fact that

"7. The satisfaction of the mortgage and re-delivery of the deed was not the free, voluntary and intelligent act of the father." Also

"8. Defendants defaulted in the consideration. They did not continue to support the plaintiff but compelled him to remove from the home and maintain himself elsewhere."

The 7th finding of fact is not supported by the testimony. There was no proof of confidential relationship. We have recently defined what constitutes, in the eyes of equity, a confidential relationship. In *Hamberg v. Barsky et al.*, 355 Pa. 462, 50 A. 2d 345, Mr. Jus-

tice Horace Stern said, p. 465: "It is not limited . . . to one which arises from circumstances or relations preceding the occurrence which gives rise to the controversy but may spring from the dealings and conversations between the parties in connection with the very transaction itself. It exists between two persons whenever 'one has gained the confidence of the other and purports to act or advise with the other's interest in mind': Restatement, Restitution §166; comment d. 'Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible. . . . No precise language can define the limits of the relation or fetter the power of the court to control these conditions. . . . In some cases the confidential relation is a conclusion of law, in others, it is a question of fact to be established by the evidence': Leedom v. Palmer, 274 Pa. 22, 25, 117 A. 410, 411, 412; Null's Estate, 302 Pa. 64, 68, 153 A. 137, 139; McCown v. Fraser, 327 Pa. 561, 564, 565, 192 A. 674, 676; Ringer v. Finfrock, 340 Pa. 458, 461, 462, 17 A. 2d 348, 350. 'A confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest': Drob v. Jaffe, 351 Pa. 297, 300, 41 A. 2d 407, 408."

A review of the evidence discloses no dependence, trust or unfair advantage. Neither the daughter nor her husband exerted any "overmastering influence" over the father. The plaintiff demonstrated that he was fully capable of looking after his own affairs. He was even guided by legal counsel of his own selection. The trans-

action presents a business dealing between a parent and child. Plaintiff and defendants contracted for the support and maintenance of the father and agreed upon the consideration. Such transactions are not fraudulent *per se* and are treated as transactions between other persons. While a court of equity will closely scan such contracts when their validity is attacked, fraud or undue influence must be clearly proven as in any other case: *Reehling v. Byers,* 94 Pa. 316; *Estate Robert Coleman, deceased,* 193 Pa. 605, 44 A. 1085. Neither is there proof of fraud, actual or constructive.

By the 8th finding of fact, supported by sufficient testimony, and sustained by the court in banc, it has been found that defendants defaulted in the consideration in that they did not continue to support plaintiff, but compelled him to remove from their premises and to maintain himself elsewhere. There is therefore presented the pivotal question: where there has been a default or failure in the consideration of a conveyance, will a court of equity grant relief by cancellation or rescission of the deed and the restoration of the injured party to his original position, or is he relegated to an action at law for damages?

It is the general rule that a deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration: *Maguire v. Wheeler,* 300 Pa. 513, 519, 150 A. 882; *McCreary v. Edwards,* 113 Pa. Superior Ct. 151, 155, 172 A. 166. Where, however, deeds are given in consideration of *support* equity will, upon the grantee's failure or refusal to furnish support in accordance with the promise, decree cancellation or rescission on equitable terms: 26 C. J. S., section 21 (b), p. 196; Restatement, Contracts, section 354, p. 610 et seq.; Williston on Contracts (revised edition) vol. 5, section 1456, p. 4068; 112 A. L. R. 670 et seq.

Mr. Williston, supra, in footnote 4, states that on failure of consideration in support cases, some courts raise a presumption of fraudulent intent from the sub-

sequent failure to support, while others, even where rescission is denied, supply a remedy by way of lien. In the majority of the cases where, in such case, relief is given in equity by rescission, the grantor is regarded as having an equitable estate in the land. See Bispham's Principles of Equity (11th ed.) Equitable Titles, section 28, p. 37 et seq. A covenant for support is in the nature of an executory contract. Page on The Law of Contracts, section 52, p. 69 et seq.

In *Dreisbach v. Serfass et al.,* 126 Pa. 32, 17 A. 513, a grantor, in consideration of $1 and an agreement for support conveyed land to the grantee, reserving a life estate. The grantee breached her agreement to support. In an action of ejectment the court below ruled that the remedy for a breach of the covenant must be by an action at law. This Court reversed and held that the grantor retained an equitable title; that such a covenant was *an executory contract.* It was said, at p. 41: "It would be contrary to the original intentions of the parties as well as against good conscience to permit the vendee to recover the possession of land from his vendor, or one holding his title, without rendering or offering to render the equivalent contracted for."

In *Davis v. Martin,* 8 Pa. Superior Ct. 133, in an action of ejectment, recovery of land by a grantee was refused where the grantee had failed to comply with his agreement to support. In *Borys v. Halko,* 124 Pa. Superior Ct. 418, 188 A. 539, there was a conveyance of real estate in consideration of a promise by the grantee to support the grantor for his life. On breach of the covenant the deed was cancelled and rescinded. Judge STADTFELD said, p. 425: "The court prefers to treat deeds having such a consideration in the nature of an executory contract. The burden is on the grantee to show full performance of his agreement to care for the grantor." In the late case of *Swartz v. Hafer,* 354 Pa. 320, 47 A. 2d 224, where land was conveyed in consideration of the grantee's providing the grantor with support and main-

tenance for life, a failure of the grantee to perform the services for which he was obligated was the basis for rescinding and cancelling the deed. Mr. Justice JONES said, p. 323: "As the court below correctly observed, the conclusion of law that the plaintiff was entitled to exclusive possession of the premises and a return of the deed for cancellation logically flowed from the established findings. The agreement itself expressly provided that 'If, for any reason whatsoever the [Hafers] should be unable to carry out their part of the agreement, or should they be unwilling to continue to carry out the agreement, in either case [they] agree to reconvey the premises . . . to [Mrs. Swartz], or her estate, if not living, and terminate the agreement.' Even where no specific provision has been made for a reconveyance of a property conveyed under circumstances similar to the present, a failure of the grantees to perform the services for which they are obligated justifies an order requiring a reconveyance: see Borys v. Halko, 124 Pa. Superior Ct. 418, 188 A. 539. The contract here involved was an executory one, subject to the rules of equity as regards its construction and enforcement: Dreisbach v. Serfass, 126 Pa. 32, 40, 17 A. 513; Davis v. Martin, 8 Pa. Superior Ct. 133, 138."

With respect to *Sellers v. Sellers,* 316 Pa. 404, 175 A. 401, it is sufficient to say that the grantor died after exceptions to the decree in the lower court setting aside the deed and before the case was argued in this Court. Under such circumstances the contract was no longer executory. There was no need for rescission for breach of the promise to support. There remained a full and adequate remedy at law by way of damages.

We therefore affirm the decree of the court below, but without prejudice to any possible intervening rights of innocent third persons.

The decree is affirmed, the parties to pay their respective costs.