**Wilson v. Jordan**

*Edward G. Petrillo*, for plaintiffs.
*Bernard J. Hessley*, for defendants.

WOLFE, P. J., June 26, 1972.—This is an action to quiet title brought by plaintiffs who are mother and son and who allege ownership of the parcel of land in Conewango Township, the subject matter of this dispute, against defendants who claim possession and right to ownership of the premises by virtue of a contract between defendants and plaintiff, Dorothy Wilson.

Originally, Dorothy Wilson and her husband acquired title to the premises as tenants by the entireties on April 5, 1960. These parties were subsequently divorced on November 5, 1965, without perfecting a property settlement between them, thus leaving the subject premises in them as tenants in common. Thereafter, plaintiff, Brent Wilson, as a minor, acquired an undivided one-fourth interest of the premises from his father on March 28, 1969, and another undivided one-fourth interest from his sister on July 18, 1969.

Sometime in the summer of 1965, she and defendant Ronald Jordan, nephew of plaintiff Dorothy Wilson orally agreed defendants could move onto the premises for the purpose of making it their home, which they did. Dorothy Wilson asserts possession was given under an arrangement whereby defendants were to repair the premises in lieu of rent for a period of three years. Defendants dispute this and state they took possession during negotiations for the sale of the premises by Dorothy Wilson to them.

In any event, at the time of, or shortly after taking possession, preliminary negotiations were entered into

by letters from Dorothy Wilson alone to defendants which ended in an agreement to sell the entire premises to defendants for $1,000, witnessed by her letter under date of April 5, 1966. At this time, defendants had an estimated $7,111.96 improvements on the premises, including a mobile home purchased for $2,633.44 and made an integral part of the dwelling. It was not until this latter date defendants consulted an attorney and ascertained the status of the title in plaintiffs.

Defendants filed new matter and a counterclaim to the complaint, alleging a fraud had been worked upon them by plaintiff Dorothy Wilson and alleged at the time she was acting as a constructive trustee for her minor son, Brent Wilson, who was 19 years of age. Defendants also counterclaim, in the alternative, alleging plaintiffs either hold title as trustees for defendants and should be directed to convey the premises upon receipt of the purchase price or make restitution to them for the repairs, alterations and modifications to the premises.

Why plaintiffs sought relief by action to quiet title and not ejectment is not clear, except counsel for both parties stipulated for an amicable action to quiet title.

From the evidence received, the court cannot conclude the conduct of plaintiffs rises to the status of fraud; at best, the evidence concludes Dorothy Wilson was under the mistaken impression she and her two children were the owners of the property following the divorce and she, as guardian for her then minor children, could convey their interest to defendants. Nor can the conveyance into Brent Wilson of the subject premises by his father in 1969 vest any interest in defendants that can now be enforced by the principle of estoppel by deed. Prior to this date, the title was

reposed in the father and he made no commitments whatsoever to defendants nor, as far as the record indicates, any commitment to sell his undivided one-half interest to his children or to his ex-wife. At best, and certainly not helpful to defendants, the testimony shows there was ill feeling and a fear by the mother of her ex-husband during the negotiations and she was attempting to evade him and conceal her whereabouts from him and there is no evidence whatsoever to indicate the children were in communication with their father during this period of time prior to the conveyance of his one-half interest in the premises to them. Proof of fraud must be clear, precise and indubitable, which means the complaining party was induced to act by reason that there was a representation of a past or existing material fact, and a statement which is merely promissory in nature does not constitute fraud: Laughlin v. McConnell, 201 Pa. Superior Ct. 180 (1963). It must be proved by more than a mere preponderance of the evidence: McCreary v. Edwards, 113 Pa. Superior Ct. 151. In any event, there was no evidence whatsoever Brent Wilson entered into any conspiracy with his mother to defraud defendants. Even if the court assumes the mother intended to defraud defendants, this alone could not, in any way, affect the title of the undivided one-half interest in her ex-husband. Since Brent Wilson did not receive title of the father's undivided one-half interest until 1969, it could hardly be found on the evidence presented there was any conspiracy between the mother and son to defraud defendants. Consequently, we hold defendants cannot prevail on their argument of fraud.

Concerning the minority of Brent Wilson, no evidence has been presented that could affect his title

interest either before 1969 or thereafter. The Fiduciaries Act of 1949, as amended August 2, 1963, P. L. 503, 20 PS §320.1012, forbids the court to appoint a parent as guardian of the estate of a minor; notwithstanding, this same act, under section 1002 permits the court to authorize a parent to execute, as a natural guardian, a deed to transfer the minor's interest in real estate. A parent, however, without such order has no authority by reason of her natural guardianship per se to sell an interest in land owned by her minor son: Vought Estate, 175 Pa. Superior Ct. 174 (1954); Brill v. Brill, 282 Pa. 276 (1925). No steps were taken by the mother in the instant case to secure court approval of sale of her children's interest nor as the events have developed could there have been. All of the evidence indicates the other undivided one-half interest was still lodged in the father subsequent to the divorce until 1969: Act of 1927, as amended, May 17, 1949, P. L. 1394, sec. 1, 68 PS §501.

Thus, we, therefore, hold that the interest of plaintiff, Brent Wilson, has not been divested by reason of the negotiations between his mother and defendants nor was it affected by any cover of trust.

Turning to the undivided one-half interest of Dorothy Wilson, defendants admittedly went into possession with her knowledge and consent and admittedly made improvements with her knowledge and consent, all without any written agreement of sale except her written commitment to sell of April 5, 1966. It is further acknowledged no consideration has been tendered by defendants nor have defendants paid any rent since taking possession.

In order to take a parol contract for the sale of real estate out of the operation of the statute of frauds, the evidence must show as stated in Brotman

v. Brotman, 353 Pa. 570 (1946), citing Hart v. Carroll, 85 Pa. 508, ". . . that possession was taken in pursuant of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust."

The evidence in this regard must also be direct, positive, express and unambiguous: Moyer v. Moyer, 356 Pa. 184 (1947). See also Klingensmith v. Klingensmith, 375 Pa. 178 (1953), holding the oral agreement must contain all the elements of a legally recognizable contract.

Here, the statute of frauds may not have been originally satisfied by the oral agreement between the parties as to the original basis for taking possession by defendants but, subsequently thereto, the letter of commitment of plaintiff, Dorothy Wilson, satisfies the statute of frauds. It is enough that the agreement be signed by the party to be charged if the other party has accepted it: Di Bennedetto v. Di Rocco, 372 Pa. 302 (1953), holding the statute of frauds does not require an agreement for the sale of realty to be signed by the purchaser, but requires it to be signed only by the parties making or creating the interest in the land.

Defendants offered $1,000 for the whole of the premises, not merely a part thereof. Defendants' testimony in regard to the purchase price is they intended to use the subject premises as collateral for a loan. In addition, to compound this matter, the evidence concludes both parties were laboring under a mutual mistake of law, to wit, that Dorothy Wilson had title to the fee forming the subject matter of the contract.

In this regard it is generally held a contract made under a mutual mistake of law may be rescinded upon discovery of the mistake, provided the parties can be placed in their former position with reference to the subject matter of the contract. Miners and Merchants Bank of Nanty-Glo Case, 313 Pa. 118 (1933), "Equity has so far contented itself with relief in cases of mutual mistake of legal rights where it was possible to restore both parties to status quo. If that cannot be fully done, equity will not assist one party to unload the burdens on the other."

In an action to quiet title, the court may exercise equity principles and impose such conditions and terms as the circumstances require: Kalyvas v. Kalyvas, 371 Pa. (1952).

At this juncture, we conclude from all of the evidence defendants took possession of the subject premises under a written contract of commitment signed by the party to be charged, to wit, Dorothy Wilson, as to her interest in the premises only and defendants have made substantial and permanent improvements to the premises in reliance thereon and in good faith and defendants cannot now be restored to their status quo.

Equity dictates, since plaintiff, Dorothy Wilson, cannot convey the fee but only an undivided one-half interest therein, this contract is enforceable against her upon payment of one-half of the purchase price. If defendants elect to become tenants in common with plaintiff, Brent Wilson, this will be their prerogative; otherwise defendants must remove so much of their property from the premises that can be done without any more damage to the premises than existed at the time defendants took possession and made improvements, thereon.

If defendants find themselves in an awkward and frustrating position, they must realize that they aided in creating it. Defendants took possession and made their improvements at a time when they were burdened with the obligation to ascertain the status of the vendor's title and admittedly failed to do so. On the other hand, plaintiff Dorothy Wilson held out to defendants she had merchantable title to the fee and, therefore, equity dictates that she be compelled to convey the interest she, in fact, can convey.

For the foregoing reasons the court makes the following

## ORDER

And now, to wit, June 26, 1972, within 30 days from the date hereof defendants shall tender $500 to Dorothy Wilson as the consideration for the undivided one-half interest of the premises owned by her and Dorothy Wilson shall execute a good and sufficient deed for an undivided one-half interest of the premises to defendants in consideration therefor. All closing fees and costs are in accordance with the Warren County Bar Association custom and rules.

In the event defendants fail to tender the aforesaid $500 within 30 days from the date thereof, defendants are ordered to remove themselves, their trailer and other possessions from the premises without any more damage to the fee than existed upon their original possession thereof all within 60 days from the date hereof.

Record costs shall be equally divided.

Exceptions noted to both parties.