Upsal Street Realty Company,
Appellant, *v.* Rubin.

Argued December 7, 1936; reargued April 12, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

328

*Sigmund H. Steinberg,* of *Blanc & Steinberg,* with him *Frank H. Gelman,* for appellant.

*Benjamin Stenzler,* with him *Howard A. Silver,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 27, 1937:

Plaintiff brought suit in assumpsit against the defendant alleging a breach of an agreement to enter into a lease of an apartment in a house owned by plaintiff. It was averred in the statement that defendant offered to lease from the plaintiff this apartment for a term of twenty-one months from January 10, 1936, at a total rental of $3,465, and that defendant executed and delivered to plaintiff a written application to lease, a copy of which was appended to the statement of claim, and that on the following day the defendant orally accepted plaintiff's offer as contained in that application and that plaintiff and defendant arranged to execute a written lease on November 28, 1935, but the defendant later refused to sign the lease. Defendant filed an affidavit of defense raising the following questions of law: (1) That "the application [of defendant] is not an offer" but merely an invitation to negotiate; (2) That the

measure of damages (the rent which defendant agreed to pay) is erroneous. The affidavit of defense was sustained on the first ground and judgment entered in favor of defendant. After re-argument, the first decision was adhered to. Plaintiff appealed.

The basis of this suit is a paper bearing the caption, "Application For Lease." A certain apartment is designated as "D 203-204 Floor." The paper then contains data as to the applicant. It contains also the following:

"Lease Rental $3465.00"

"Term of Lease 21 month From 1-15-36 to 10-15-37." Under the reading of "Remarks" appears the following:

"Apt. to be redecorated throughout to tenants selection. Selection of colors will be made after lease is signed."

The court below said: "The paper signed by defendant was unilateral in its terms. It was not an agreement signed by both parties but was just what it purports to be, 'An Application' contemplating something to be done by both parties in the future. This is evident from the notation on the Application—'Selections of colors will be made after lease is signed.' There is nothing in the application to justify a conclusion that there was a union of the minds of the parties as to the terms of the lease. There is no averment that a deposit was made by the defendant. Even if there was a deposit, the plaintiff 'reserves to itself the right to return such deposit accompanying the application. The return of the said deposit shall constitute a valid and sufficient refusal to lease to the applicant, and the applicant herewith expressly agrees to this stipulation.'"

That an *offer* is distinguished from *preliminary negotiations* is a fact well recognized in the law of contracts. Williston on Contracts (revised edition), Vol. 1, section 27, makes this statement: "Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction

of the words and conduct of the parties is rather that they are inviting offers, or suggesting the terms of a possible future bargain, than making positive offers. . . . Language that at first sight may seem an offer may be found merely preliminary in its character." Section 25 of the Restatement of the Law of Contracts reads as follows: "If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer." Section 26: "Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions as stated in section 25." In "Comment" under section 26 appears the following: "a. . . . if the preliminary agreement is incomplete, it being apparent that the determination of certain details is deferred until the writing is made out; or if an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract."

In the instant case it is clear that the "preliminary agreement" labeled an "Application For Lease" was incomplete. The rental item alone discloses that. Whether the sum of $3,465 as rental was to be paid in advance or at the end of the term or in quarterly or monthly installments, and if in installments whether these were to be *in advance* or otherwise, does not appear. The matter of decoration and selection of colors was also incompletely referred to. The word "redecorate" has a wide variety of meanings. Webster's New International Dictionary defines "decorate" as "to increase in beauty

by the addition of something becoming or beautiful." When the application specified: "Apartment to be redecorated throughout to tenant's selection," it left the character and extent of the decoration undefined and it cannot be determined to a certainty from the language used whether the decoration was to be paid for by the landlord or by the tenant. The sentence might mean: I, the proposed tenant, will redecorate the apartment to suit myself and I will pay for such decoration; or it might mean: I will order the apartment decorated according to my own ideas of good taste and expense and the landlord will pay for it. The other phrase used, to wit: "Selection of colors will be made after lease is signed," clearly indicates that a lease was to be signed which would be specific in all its terms as to the character and extent of the proposed redecoration except the mere detail of selection of colors.

This court has recognized a distinction between "proposed understandings" and a "concluded agreement." In *Vitro Mfg. Co. v. Standard Chemical Co.*, 291 Pa. 85, 139 A. 615, we said: "It is evident from this correspondence that the parties were negotiating to buy and sell, and that each set of letters refers only to proposed understandings which were to be concluded in the future; whereas, if a right of recovery is to be shown, the terms of a concluded agreement must appear." In the case at bar all the important terms of a concluded agreement do not appear.

The "Application For Lease" contained more data about the applicant than it did about the proposed lease. It gave his business and residential addresses and telephone numbers, the size of his family, the name of his landlord, how long he had lived at his address, and business and social references. It, in effect, said to plaintiff: "I am now in the market for an apartment such as your Apartment D 203-204, look me up and if you conclude that I would make a suitable tenant for this apartment at a gross rental of $3,465, for twenty-one

months, I am willing on that *as a basis* to negotiate with you as to the other terms of the lease." Practically all the terms customarily found in leases, except the tenure and rental, were omitted from the application. As already noted, nothing was stipulated as to *how* and *when* the rent should be paid. Nothing was said as to how long a period of grace for nonpayment of rent would be allowed, or as to whether the landlord expected the proposed tenant to agree to confess judgment for the rent payable for the entire term in case of default and to waive exemptions in that confession of judgment, or as to how the landlord should acquire possession of the premises in case of default, or as to whether the lease would be automatically renewed at the end of the term. No reference was made to light, heat and water, or to the respective rights and obligations of the parties should the apartment be destroyed or damaged by fire. It is not unusual for persons to agree to negotiate with the view of entering into contractual relations and to reach an accord *at once* as to certain major items of the proposed contract and then later find that on other details they cannot agree. In such a case no contract results.

In *Elkhorn-Hazard Coal Co. v. Kentucky River Coal Corp.,* 20 Fed. (2d) 67, the Circuit Court of Appeals of the Sixth Circuit held that when the defendant wrote the plaintiff as follows: "I would be willing to make a lease to your company of this land [describing it] at a royalty of ten cents per ton and a minimum say on what you might mine the first six months after signing this lease; the first year following $1,000; and the second year following and each year thereafter $2,000, the Elkhorn-Hazard Coal Company paying all county, state and school taxes on same. If this meets with your approval, our general counsel will draw up a lease for your signatures according to the above terms," and when plaintiff replied: "It accepts offer as proposed in the letter aforesaid, and requests that your company draw up its

customary lease as your company makes to other persons under similar circumstances," a contract did not result. The court said: "The letter is not in form an offer. It merely says that the writer 'would be willing to make a lease.' Its last paragraph calls for a communication to the writer of an approval, and repels the idea that a contract would result by merely mailing an acceptance." The court further said: "The letter calls for a previous expression of approval, without which no lease is to be prepared and executed. The subject-matter is of a nature to require a formal writing for its full expression. It is of that class which is usually put in writing. The letter treats of only a few of the terms of the usual lease."

In *Lyman v. Robinson*, 14 Allen (Mass.) 242, 254, it was aptly said: "Care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation." See *Moulton v. Kershaw et al.*, (Wis.), 18 N. W. 172.

In the case of *Way v. Fraser*, 230 Pa. 49, 79 A. 154, which was an action for a breach of contract to make a lease, defendant's partner, Loveless, had a conversation with the plaintiff about leasing certain property. This was followed by a letter reading as follows: "I did not get the opportunity yesterday to call you up after I had talked with my partner. We do not feel that we care to obligate ourselves for a longer lease than three years or five at the rent offered, viz., $4,000. If this offer interests you let me know sometime soon, as we want to get the matter off our hands. We have two or three locations under consideration, but I prefer your place myself." The property referred to was the plaintiff's warehouse at No. 439 Liberty Avenue, Pittsburgh. After the receipt of this letter, the parties had a second conversation and the plaintiff agreed to lease the warehouse to the defendant and his partner, from April 1, 1905, at an annual rental of $4,000. Plaintiff then prepared and mailed to defendant's partner a lease for the prem-

ises, accompanied by a letter reading as follows: "I have received your letter of the 30th inst. regarding lease of building at No. 439 Liberty Street, and confirming my conversation with you this morning. I beg to hereby accept your proposition, and inclose leases of the building to you and Mr. Fraser for three years at the rate of $4,000, the amount suggested in your letter. Kindly have one of these leases signed by yourself and Mr. Fraser and the signatures duly witnessed and return the same to me as soon as possible. . . ." The leases prepared were returned by defendant unexecuted, with a letter stating that defendant and his partner were "not open for a lease at this time." Judgment was entered on the demurrer, and affirmed by this court in an opinion by Mr. Justice ELKIN, who said: "We agree with the learned court below that the Loveless letter was only an expression of his willingness to negotiate for a lease and was not a definite offer containing the terms and conditions upon which he would lease the property. The most casual reading of the letter shows that further negotiations were intended and no final conclusion had been reached."

Williston on Contracts (revised edition), Vol. 1, section 28, states: ". . . frequently where the parties contemplate a future written contract, it is obvious from their language or from the surrounding circumstances, that other matters, as to which no definite agreement has yet been reached, are expected to be provided for in the writing. In such a case the oral agreement may be objectionable for indefiniteness, and in any event a positive intention is apparent that the bargain shall be ineffectual until some further acts." Section 37: ". . . A lack of definiteness in an agreement may concern the time of performance, the price to be paid, work to be done, property to be transferred, or miscellaneous stipulations in the agreement."

In the instant case the conclusion is inescapable that the "Application For Lease" was a mere offer by the

applicant of himself as a possible tenant of the premises defined, for a term of twenty-one months at an aggregate rental of $3,465, with the understanding that if applicant was personally acceptable to the landlord, he and the latter's representative would meet and execute a lease *provided they could both agree on all the necessary stipulations,* in addition to the two stipulations (term and aggregate rental) as to which there was preliminary accord. The landlord's mere personal acceptance of the applicant did not fulfill all the conditions of the proviso and therefore no contractual relations resulted.

The judgment is affirmed.

Mr. Justice DREW and Mr. Justice STERN dissent.