# Sheesley, Appellant, *v.* Bisbee Linseed Company.

Argued December 6, 1939. Before Kephart, C. J. Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*George L. Reed,* with him *James A. Walker,* for appellant.

*William N. J. McGinniss,* with him *Wendell E. Warner,* and *Foulkrod, Sheppard, Porter & Alexander,* for appellee.

Opinion by Mr. Justice Drew, January 2, 1940.

Byron F. Sheesley brought this action in assumpsit against the Bisbee Linseed Company to recover damages for an alleged breach of contract. To the statement of claim, an affidavit of defense in the nature of a demurrer raising questions of law was filed, but the issue was determined against defendant and it was permitted to file an affidavit of defense to the averments of fact. At the conclusion of the trial, a verdict was directed in favor of defendant, and plaintiff's motion for a new trial was refused. This appeal is from the judgment entered upon that verdict.

Defendant manufactures edible oils from crushed seeds and sells the meal as a by-product. Sometime in September, 1934, defendant started to import rapeseed, also known as coleseed or colzaseed, which upon crushing produced Colza Oil and Colza Oilmeal, and which was used as a feed for cattle. Plaintiff, who had for many years been engaged as a dealer of feeds for livestock, was recommended to defendant as a good salesman to market its product. Plaintiff was interested in the proposition and after some preliminary negotiations,

the written contract out of which the present controversy arises was executed. The terms of the contract are set forth in the following letter of defendant, which terms were accepted by plaintiff on October 19, 1934:

> "BISBEE LINSEED COMPANY
> "Lincoln-Liberty Building
> "Philadelphia
> "October 17, 1934.
> "(dictated October 16).

"Mr. B. F. Sheesley,
"R. D. No. 3,
"Harrisburg, Pa.

"DEAR SIR:

"We confirm our conversation yesterday. In consideration of your selling for us and aggressively pushing the sale of Colza Oilmeal, sometimes called Coleseed Oilmeal or Rapeseed Oilmeal, and refusing to sell Colza Oilmeal which may in the future be produced by other companies, we have given you the exclusive sale of our Colza Oilmeal, Coleseed Oilmeal or Rapeseed Oilmeal in the following counties for a period of one year, with the option of extending the contract to a period of an additional five years.

"*Pennsylvania Counties:* Lancaster, Dauphin, York, Lebanon, Berks, Franklin, Cumberland, Perry, Snyder, Union, Center, Chester.

"*Maryland Counties:* Frederick, Montgomery, Carroll, Harford.

"It is agreed that we will give you net prices for this Colza Oilmeal f.o.b. our Philadelphia plant and that you will sell the meal at an increased price, the difference to be your profit on the product.

"It is agreed that you will register the product with the State Authorities in your own name.

"At the present time, the product is sold with a guaranteed minimum protein 34%, minimum fat 8%, max-

imum fibre 10%, and the ingredients of the meal are commercially pure Colza Seed, otherwise called Coleseed or Rapeseed. We, however, reserve the right to change our guaranteed analysis should we at some future time find that pure Colza seed of commercial quality will not produce an oilmeal of the above specifications. We have no reason to believe that the quality will be changed, although it is sometimes necessary, owing to the difference in crops which are grown.

"This agreement covers only our production of pure Colza Oilmeal, otherwise known as Coleseed Oilmeal or Rapeseed Oilmeal and all other products which we produce are specifically exempted from this agreement.

"As we advised you yesterday, our price at present is $28 in bags f.o.b. our Philadelphia mill and in the event that there is any change in the market, we will advise you immediately by telephone or letter.

"We are writing this letter in duplicate and shall be pleased to have you sign and return one copy.

"Yours truly,

"BISBEE LINSEED COMPANY.

"A. L. Bisbee,

"Vice President.

"ALB: SM
"Accepted: B. F. Sheesley.
"Date: October 19-34."

The original contract was for a period of one year and covered certain counties of Pennsylvania and Maryland. Subsequently, the territory was enlarged to include several states and plaintiff exercised his option to extend the agreement for an additional period of five years, so that the contract as sued upon terminated on October 19, 1940.

Plaintiff proceeded to market the Colza Oilmeal and developed a substantial business in the territory allotted. Both parties were in the process of carrying out the terms of the contract, until Congress imposed an

impost tax, effective on August 21, 1936, of two cents per pound, or forty dollars per ton, on the importation of rapeseed. Before Congress passed this act the defendant pointed out to the plaintiff that if this tax was imposed defendant would not be able to continue to import the rapeseed and manufacture the Colza Oilmeal because of the imposition of the tariff, which would make the price at which the meal could be sold so high as to make it impossible to sell. After the act was passed defendant advised the plaintiff that after defendant's present supply of Colza Oilmeal was exhausted no more would be available. The last Colza Oilmeal which the defendant had on hand was delivered to the plaintiff in September, 1937. The plaintiff was then advised by the defendant that it would not manufacture any more Colza Oilmeal. Plaintiff thereupon brought this suit.

It is a fundamental principle that the interpretation of written instruments, where there is no conflict in the facts, is a question of law for the court: *Meaker Galvanizing Co. v. Charles E. McInnes & Co.*, 272 Pa. 561, 565. We have no doubt from a study of the present agreement that a mutuality of obligation was imposed. The undertaking on plaintiff's part to "aggressively" push the sale of Colza Oilmeal implied a corresponding obligation on defendant's part to furnish its product to plaintiff. Similarly, there were mutual promises to assure plaintiff the exclusive sale of Colza Oilmeal in the assigned territory and to insure that plaintiff would not market any other brands. In speaking of a contract somewhat similar in nature, we said in *Freedom Oil Works Co. v. Williams*, 302 Pa. 51, 55: "Contracts of this character are usual in this State, and, so far as we have discovered, no one has heretofore questioned the mutuality of obligations incurred by the respective parties." The contract was definite, mutual, based on sufficient consideration, and contained correlative obligations upon the part of both plaintiff and defendant, so that an action for damages was maintainable by

either party upon breach by the other during its existence.

We find it unnecessary to decide whether this contract created the relationship of "vendor and vendee" between plaintiff and defendant, or an "exclusive sales agency," or "a grant of the right to sell the particular commodity within the prescribed territory to the exclusion of all others," since we are unable to find any breach by defendant of its obligations. We have searched the record in vain to find any affirmative evidence that defendant was itself guilty of violating plaintiff's exclusive territorial rights. Nor was it a breach of defendant's implied undertaking to sell Colza Oilmeal to plaintiff for defendant to stop manufacturing the product owing to the confiscatory effect of the impost. It is all too evident from the agreement that the parties contemplated that the contract was to exist only so long as defendant produced the Colza Oilmeal. It is expressly stated therein: "This agreement covers only our production of pure Colza Oilmeal, . . ." In other words, this contract is to be classified in the category of "output" agreements, and it is well established that in such undertakings there is no implied obligation to keep the plant in operation until the end of the period specified, if the manufacturer in good faith finds himself unable to do so: *H. M. Pfann & Co. v. J. C. Turner Cypress Lumber Co.*, 194 Fed. 69; *Kenan, McKay & Spier v. Yorkville Cotton Oil Co.*, 260 Fed. 28; *William S. Gray & Co. v. Western Borax Co., Limited*, 99 F. (2d) 239. Here, for reasons beyond defendant's control, it was forced to cease production of Colza Oilmeal, and since its action was in entire good faith and not for the purpose of injuring plaintiff in his enterprise, it follows that it did not violate any of its obligations to plaintiff.

Judgment affirmed; appellant to pay costs.