## Upsal Street Realty Company v. Sacks

*Benjamin F. Kivnik*, for plaintiff.
*Louis Levinson*, for defendant.

FLOOD, J., January 3, 1946.—This was an action in assumpsit for rent tried before me without a jury.

Defendant occupied one of plaintiff company's apartments in September 1940, following certain negotiations with John M. Sewell, plaintiff's superintendent at the apartment house. Sewell had no authority to conclude a lease, but presented defendant with an "application for lease" which defendant signed, and which, according to Sewell's testimony, was then forwarded to plaintiff's central office and returned approved.

This application form provided for a lease of the apartment for a two-year term commencing November 1, 1940, at an annual rent of $1,200. Certain repairs and painting were stipulated. It was also provided that a letter of credit for the rental for the months of September and October 1942 would be issued with the lease upon condition that the terms of

the lease were fulfilled. A deposit of $50 was provided for.

The application contained the following clauses:

"Upon acceptance of this application by the lessor, this instrument shall be construed as an acceptance of the lease and/or in lieu of lease for the above-mentioned apartment or any other apartment that the tenant may occupy on the above-mentioned premises at the option of the lessor.

"Upsal Garden reserves to itself the right to return the deposit accompanying this application. The return of the said deposit shall constitute a valid and sufficient refusal to lease to the applicant, and the applicant herewith agrees to this stipulation."

Sewell told defendant that the lease was approved and he then moved in in September 1940.

Later the president of plaintiff company, Mr. Elgart, wrote to defendant refusing to execute a lease upon these terms. One letter was written on September 11, 1940, which defendant says he did not receive. Other letters were written later and admittedly Mr. Elgart's position was brought to plaintiff's attention not later than March 1941.

Elgart in these letters insisted that the rental price of the apartment was $125 per month and demanded that this amount be paid and stated that all payments for lesser sums were being applied on account. However, bills for rental at the rate of $100 per month were sent to defendant by plaintiff company commencing at least as early as March 1, 1941, and regularly thereafter. Receipts for rent in the sum of $100 in advance were issued to defendant regularly, commencing at least as early as December 1, 1940. None of the receipts specified that they were receipts for payments made on account.

On or about August 14, 1942, plaintiff registered the apartment with the Office of Price Administration at rental of $100 per month.

The repairs and painting called for in the application were made prior to September 1, 1940, but Mr. Elgart testified that he did not authorize this and only learned about it after defendant was in the apartment.

There appears to be no communication on the subject of the terms of the lease between Mr. Elgart and defendant after May 1941. At the end of the purported term of the lease, November 1, 1942, defendant remained in the apartment and continued to pay the rent at the rate of $100 per month and received receipts therefor, none of which specified that the payments were received on account.

Plaintiff claims that defendant was merely a tenant at will and that the value of the apartment in September 1940 and since has been not less than $125 per month, and sues to obtain the difference between rental in that amount and the amount actually paid by defendant.

1. Plaintiff bases its contention that defendant is merely a tenant at will upon the fact that the application is not a contract, but merely a step in the preliminary negotiations. It relies upon the proposition that the "application for lease", even though accepted by it, can never ripen into a contract of lease in view of the decision of the Supreme Court in the case of Upsal Street Realty Company v. Rubin, 326 Pa. 327 (1937). However, the application passed upon by the Supreme Court in that case has been modified, evidently for the purpose of meeting that decision, by the addition of the first paragraph quoted above. That paragraph provides that the application itself, upon acceptance by the lessor, shall be construed as an acceptance of the lease "and/or in lieu of lease". This clause sharply differentiates the application before us from the one before the Supreme Court. If this application was accepted by plaintiff, the repairs and painting provided for completed, and defendant permitted to move

in, then there is a contract and the failure to execute the formal lease later would operate to make the application stand "in lieu of lease".

2. All the evidence indicates that the application was accepted. Sewell testified that he forwarded it to the central office and that it was returned initialed to indicate approval. The painting was done, although Miss Cooper, Mr. Elgart's secretary, testified that this sort of work was never done without the prior approval of the central office. A deposit was accepted and never returned. Defendant has never been asked to vacate. He has never received a bill for more than $100. The receipts given him always read as though they were receipts in full and not on account. All of this indicates that the lease was approved. Compare Arrott Steam Power Mills Company v. Philadelphia Wood Heel Company, 50 D. & C. 462 (1944).

On the other side, we have Mr. Elgart's testimony of the letter sent to defendant on September 11, 1940, telling him that the lease was disapproved. There is no testimony to the effect that this letter was ever actually put in the mail-box and there was testimony that defendant never received it.

Since this occurred more than three weeks after the approved application was returned to Mr. Sewell, I do not believe that plaintiff could at that time, after defendant had been permitted to move into the apartment, change the terms of the lease.

In spite of its later letters stating that the amounts paid by defendant were accepted only upon account, plaintiff apparently never gave any instructions to have the bills changed or the receipts marked "on account". It seems quite evident that it was endeavoring to hold defendant as a tenant but get additional rent from him if it could. The fact that there is no evidence of any complaint after May 1941 until suit was commenced in August 1945, all but persuades me

that a trap was being laid for defendant so that this additional rent could be obtained from him by suit, although everything would indicate to him that plaintiff had abandoned its attempt to get higher rent four years before.

3. Even if we were to accept plaintiff's version as to the making of the lease, all of the evidence indicates a ratification thereof later. The deposit was not returned. No protest was made after May 1941. The bills were always sent in the sum of $100. The receipts were always made as though in full. Plaintiff's threat, in the letter of April 17, 1941, to make a levy proved to be nothing but words since no levy was ever made, and everything would indicate that plaintiff finally acquiesced in the situation, and that the lease, if not initially approved, was later ratified.

4. Finally, even if we were to hold that the lease was neither approved nor ratified we should have to hold that plaintiff has not proved its right to damages. Its testimony was that the apartment was worth $150 per month. This testimony turned out to be worthless. There was no testimony that any comparable apartment was rented for that sum and much testimony that several comparable apartments were rented for much less. Plaintiff's testimony is so patently erroneous that we have no credible testimony of the value of the apartment in plaintiff's case. We would be much more inclined to believe the testimony of defendant's experts that the reasonable value of the apartment at that time was $100, which defendant was paying. In any event, the most that plaintiff could recover would be the rental for the four months which defendant was to have rent-free under the application. But in view of what has been said above, it is not even entitled to this.

The court finds for defendant.