Kalyvas, Appellant, v. Kalyvas.

Argued April 2, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

372

*John A. Metz, Jr.,* with him *Metz & Metz,* for appellant.

*Alexander Cooper,* with him *Morris Zimmerman,* for appellee.

OPINION BY MR. JUSTICE BELL, June 24, 1952:

Plaintiff brought an action against his three sons to quiet title to real estate. The action was brought pursuant to Pa. R. C. P., Rule 1061 et seq. Although the action is an action at law it embraces all the equitable jurisdiction which was formerly exercisable under a bill quia timet.

We agree with the trial judge and the Court en banc that this is the type of family dispute which should never have been aired in court but should have been settled by agreement of the parties. The transactions reflect no credit upon any of the parties involved and especially none on the father whose actions throughout this entire matter have been, as we shall see, unfair to his creditors, his children and his wife.

We deem it unnecessary to give a detailed account of the voluminous evidence or the contradictory promises and agreements, charges and counter-charges; we believe the following statement of important facts will suffice.

Plaintiff and his wife by deed dated January 29, 1940, became owners of the premises known as 2553 Penn Avenue and 66 26th Street, Pittsburgh, Pennsylvania, in fee simple *as tenants by the entireties.* Plaintiff and his wife, by deed dated *June 26,* 1941, conveyed the premises to their three sons, the defendants. The deed was immediately recorded. The defendants by deed dated *July 29,* 1941, reconveyed the premises to the plaintiff. The deed was prepared, signed, acknowledged and actually delivered to the plaintiff on that date at the office of Theos E. Manos, who was a member of the Allegheny County Bar and attorney for all the parties. The plaintiff failed to record this deed until July 10, 1946. Defendants on *January 9, 1946,* six months prior to the date on which their father recorded their deed to him dated July 29, 1941, conveyed the premises to a straw man, who, the same day, reconveyed the premises to the three sons and the plaintiff as joint tenants with right of survivorship. Both of these deeds of January 9, 1946, were immediately recorded. All of the foregoing facts are undisputed.

Plaintiff came to Pittsburgh from Greece about 1922 and thereafter rented the premises in controversy for a hotel and restaurant business. In 1931 he brought over his eldest son and in 1939 the rest of his family. Except during the time when the defendants were in the military service of the United States they worked with their father in the conduct and operation of the hotel and restaurant business between 12 and 14 hours a day, generally 7 days a week, without any salary or pay. Plaintiff and the oldest son were partners on June 26, 1941 and on July 29, 1941. The family was exceptionally closely knit, although the father by virtue of old world customs was the patriarch and dominant influence in the household.

Mr. Manos testified that the reason for the original deed of *June 26, 1941,* from the father and mother to the sons was to put the property beyond the reach of a presently existing pressing creditor of the father; in other words, to cheat and defraud creditors. No one, so far as the evidence discloses, informed the plaintiff's wife of her rights in the property or explained to her that she was relinquishing those rights by the execution of this deed. Mr. Manos testified that the three defendants orally agreed to reconvey the property to the plaintiff upon his demand. The defendants denied this agreement and alleged a different oral agreement, viz., that they purchased the property for $2,100 and gave their check in payment and further agreed that each of them and the plaintiff would acquire equal shares in the real estate with the right of survivorship, although at plaintiff's suggestion the deed was made to the defendants alone. It should be noted that the defendants had three different versions of this oral agreement. The trial Judge believed Mr. Manos, although his testimony with respect to the check being paid out of and the proceeds thereof being repaid into the business do not appear to us to be very clear or convincing.

With respect to the deed from the defendants dated *July 29,* 1941, reconveying this property to the plaintiff, Mr. Manos testified on behalf of the plaintiff that it was drawn, executed and acknowledged in his office and was delivered to plaintiff by defendants at plaintiff's request in pursuance of the above-mentioned oral agreement to reconvey the property whenever the plaintiff demanded. This deed was not recorded by the plaintiff, as we have seen, until July 10, 1946. It is likely that the reason it was not immediately recorded was because plaintiff did not settle with or pay his creditor in full until April 30, 1945. Why it was not thereafter recorded has never been disclosed.

The defendants gave an entirely different reason for the execution and delivery by them of the deed of *July 29,* 1941 to the plaintiff. There was a $6,000 mortgage on the real estate and the unpaid debts of the business totaled approximately $4,000. Their father was afraid they would leave the business and work for their uncle who had started a restaurant business in the same block. The father therefore promised them, so they testified, that if they would execute the above-mentioned deed to him, he would not record it but would keep it until all the mortgage indebtedness and the debts of the business were paid, at which time he would return the deed to them and cause a new deed to be made in the name of all four of them. They also alleged that a confidential relationship existed between them at that time. Although the mortgage indebtedness and the business debts were paid off mainly out of the earnings of the business *prior to February, 1943,* the defendants did nothing to assert their rights or to compel the performance of this alleged oral agreement *until January 9, 1946,* when they made a conveyance of the property to a straw man who in turn executed and delivered to them a deed to themselves and the plaintiff dated January 9, 1946, which they immediately recorded. In spite of this litigation, they still continue to work in their father's restaurant business.

The case is unusual in that the Court en banc overruled the trial Judge's findings of fact—the trial Judge filed a dissenting opinion. The trial Judge considered Mr. Manos' testimony was credible and that of the defendants was not credible; and his findings of fact were based mainly upon Mr. Manos' testimony.

With respect to inferences and deductions from facts and conclusions of law, both the Court en banc and the appellate Courts have the power to draw their own inferences and make their own deductions and conclu-

sions: *Barrett v. Heiner,* 367 Pa. 510, 80 A. 2d 729; *Noonan Estate,* 361 Pa. 26, 63 A. 2d 80; *Payne v. Winters,* 366 Pa. 299, 77 A. 2d 407; *Smith v. Smith,* 364 Pa. 1, 70 A. 2d 630.

Where, however, a finding of fact is a true and genuine finding of fact which depends upon the credibility of a witness or witnesses whom the trial Judge has seen and heard, *such finding is entitled to great weight and should be disregarded or overruled only in clear cases*: *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 151 A. 15; *Bortz v. Troth,* 359 Pa. 326, 59 A. 2d 93. In the leading case of *Belmont Laboratories, Inc. v. Heist,* 300 Pa., supra, this Court said (p. 547): "... the chancellor's findings, where as here depending upon conflicting oral evidence, given by witnesses which he saw and heard, must receive great weight .... The court in banc can properly disregard such findings only in a clear case and then by putting upon record its reasons for so doing. ... (page 548) Where reasons are so given, it becomes the duty of an appellate court to fully and carefully examine them, together with the entire record, and determine whether the action of the court in banc is justified, keeping in mind the weight to which the original findings are entitled and also the reasons given for their overthrow."

The reasons given by the Court en banc for rejecting the findings of the trial Judge are not sufficiently convincing. The conspiracy, intentional or unintentional, entered into by these parties and the weaknesses in each of their claims made it very difficult to determine which side was telling the truth. For example, the deeds and conveyances of *June 26* and *July 29,* 1941, were undoubtedly part of plaintiff's scheme to defraud his creditors; the plaintiff perpetrated a legal fraud on his wife in that he failed to tell her the rights she was giving up in executing with him the deed to their children; plaintiff failed to record the deed of July 29,

1941 until July 10, 1946, a year after his creditors had been paid; plaintiff did not take the witness stand to deny or refute defendants' testimony of the oral agreements made between him and them with respect to the deeds of June 26 and July 29, 1941; and finally plaintiff's unconscionable treatment of his sons in employing them for years without salary or wages.

A fair summary, we believe, of the reasons for the Court en banc's overruling of the findings of fact of the trial Judge are (1) "Manos was an interested and biased witness entitled to little credence"; and (2) a confidential relationship existed between the father and his sons. If Manos was an interested witness it is indisputable that the defendants were far more interested; and the question of confidential relationship is, in this case, a question not of fact but of law; and, as we shall see, immaterial. Moreover, defendants' claims and contentions were likewise full of weaknesses. For example, they swore to three different versions of the oral agreement with respect to the original deed of *June 26, 1941*, and the interest or title they were to receive. The payment which they allege they made to purchase the property on June 26, 1941, differed from the check actually given and the discrepancy was not explained; they failed to explain why, if they were entitled to receive back the property which by their deed of *July 29*, 1941, they conveyed absolutely to their father, they never requested or demanded the reconveyance of this property or made their present claim until January, 1946, three years after they claim they were entitled thereto; and finally and perhaps the greatest weakness of their case is that the trial Judge who saw and heard them disbelieved their story and believed the evidence on behalf of the plaintiff.

It should not be overlooked that the defendants had everything to gain by their version or versions of the

transactions in question. On the other hand, Mr. Manos, whose testimony was flatly in contradiction of the defendants as to the oral agreements they claim to have made with their father in Manos' presence, had little, if anything, to gain and a great deal to lose by his testimony because it blackened his character and reputation. In the light of all these facts and circumstances we must accept the findings of fact made by the trial Judge which were based upon the testimony and credibility of Mr. Manos, and the lack of credibility of the defendants. Assuming that Mr. Manos's testimony was credible, it adequately supported the findings of fact made by the trial Judge.

The Court en banc also reversed the trial Judge's conclusion that no confidential relationship existed between the parties.

Confidential relationship is sometimes a matter of fact and sometimes a matter of law. The evidence on this point is uncontradicted. Do these facts create a confidential relationship? That deduction or determination is not a question of fact but a matter or conclusion of law: *Kees, Ex'r., v. Green,* 365 Pa. 368, 75 A. 2d 602; *Brooks v. Conston,* 356 Pa. 69, 51 A. 2d 684; *Shook v. Bergstrasser,* 356 Pa. 167, 51 A. 2d 681; *Hamberg v. Barsky,* 355 Pa. 462, 50 A. 2d 345.

If the unusual relationship of a patriarch of an old world Greek family to his sons was not present in this case, we would have no hesitation in saying the facts did not establish a confidential relationship. However, it is unnecessary to decide this precise question because in our view of the case it is immaterial whether or not a confidential relationship existed.

Even if a confidential relationship existed between this father and these children, it would not invalidate the deed from the sons to the father dated July 29, 1941, but would merely cast upon the plaintiff the burden of

proving that the deed was the free, voluntary and clearly understood act of the defendants which, if Manos' testimony is believed, it undoubtedly was. It must also be remembered that this is not a case of a father obtaining his children's property; this property was originally the property of the father and the mother, and was conveyed by them to the defendants without any consideration and only upon the express promise or agreement of the defendants to reconvey the property upon the plaintiff's demand, which defendants did a month later.

In this case each side attempted to prove an express oral trust with respect to this property; and the defendants can prevail only if the evidence of the oral trust which they rely on is credible and the trust is enforceable.

The parol agreement which the defendants alleged— even if believed—created an express trust and did not have the effect of reducing the deed to a mortgage; hence it was not affected by the defeasance Act of June 8, 1881, P.L. 84, Section 1, 21 P.S. 951.

While an implied or constructive trust is not prohibited, an express parol trust of real estate is invalid under the Statute of Frauds* and is enforceable or unenforceable at the option of the promisor: *Barrett v. Heiner*, 367 Pa. 510, 80 A. 2d 729; *Gray v. Leibert*, 357 Pa. 130, 53 A. 2d 132; *Barry v. Hill*, 166 Pa. 344, 349, 31 A. 126; *McCloskey v. McCloskey*, 205 Pa. 491, 495, 55 A. 180; *Turney v. McKown*, 242 Pa. 565, 568, 89 A. 797; *Jourdan v. Andrews*, 258 Pa. 347, 353, 102 A. 33; *Dorr v. Leippe et al.*, 286 Pa. 17, 132 A. 806; *Davis v. Hillman*, 288 Pa. 16, 20, 135 A. 254; *Metzger v. Metzger*, 338 Pa. 564, 14 A. 2d 285.** Expressed in another way,

---

* April 22, 1856, Section 4, P. L. 532, 33 P.S. 2.

** The dictum in *Metzger v. Metzger*, 338 Pa., supra, that where a confidential relationship exists the grantor may recover the real

the plaintiff correctly contends that breach of an oral agreement to hold the real estate in trust for the grantor or to reconvey the real estate to the grantor, is not sufficient to establish an enforceable parol trust in lands or to take the trust out of the statute of frauds.

In *McCloskey v. McCloskey*, supra, a brother alleged that his sisters were given their father's entire estate on their express promise to hold two-fifths of it, including the real estate, in trust for their brothers. The trust was denied by the sisters. The Court held that since no valid trust was expressly declared in writing, the alleged oral agreement or trust came within Section 4 of the Statute of Frauds and could not be enforced and that the refusal to recognize the agreement of trust or to convey the property was not sufficient to create an implied trust or take the case out of the statute. The Court in an opinion by Mr. Justice (later Chief Justice) BROWN, said (page 495) : " 'The plain meaning of this enactment is, that a trust in land can now be proved in no other way than by writing:' Barnet v. Dougherty, 32 Pa. 371.

"Though the trust is set forth as an express one, created by parol, the applicants seek to avoid the effect of the act of 1856, on the ground that a trust has resulted to them from the fraud of the appellees and is, therefore, within the exception of the act. But the only misconduct charged is that the appellees now refuse to recognize the trust, and that, notwithstanding their promise to be bound by it, they now declare they will not regard it. This is not enough to take the case out of the plain words of the statute. . . . The statute of frauds would soon become a dead letter if the mere

estate upon proof of an express oral trust, and breach thereof, has been distinguished in *Brunier v. Stanert*, 369 Pa., supra, and is hereby specifically and unequivocally disavowed.

broken promise of a trustee under a trust created by parol, who had agreed to carry it out, should, without more, be held sufficient to create a trust by implication within the exception of the act. It is only when a trustee refuses to perform or recognize a trust that courts are asked to declare its existence as against him, and if a trust, which has no legal existence under the statute, can be brought into being as within the exception simply because a trustee breaks his promise to perform, no case will be without the exception. 'The statute of frauds would be worse than waste paper, if a breach of the promise created a trust in the promisor, which the contract itself was insufficient to raise:' Kellum et al. v. Smith, 33 Pa. 158."

Similarly, this Court said in *Kauffman v. Kauffman,* 266 Pa. 270, 109 A. 640, (page 275) : "Merely as an express trust of land resting in parol, it could not be enforced against the trustees (Sec. 4 of Act of April 22, 1856, P. L. 533, Purdon's Digest, 13th ed., vol. 4, p. 4838), except that they confess it in open court. A parol trust becomes valid when in the course of litigation it is confessed by the trustee: Hatcher v. Hatcher, 264 Pa. 105, 110; Christy v. Brien, 14 Pa. 248; Houser v. Lamont, 55 Pa. 311, 317; Rockland & Venango Coal, etc., Co. v. McCalmont, 72 Pa. 221, 226. The Statute of Frauds does not prevent a trustee from honestly carrying out his parol agreements, it merely avoids the trust at his option (see note 4 to Dilts v. Stewart, 1 Atl. Rep. 591); . . ."

The defendants, according to the testimony which the trial Judge believed, fulfilled their oral agreement or express trust by reconveying the premises to the plaintiff and hence the Statute of Frauds has no application to their deed dated July 29, 1941.

Plaintiff prayed that the deeds of January 9, 1946, be cancelled; defendants prayed that their deed to

plaintiff dated July 29, 1941, be cancelled. The trial Judge refused the prayers of the plaintiff and of the defendants, and in an attempt to work out substantial justice cancelled and declared invalid all of the four deeds hereinabove set forth (June 26, 1941, July 29, 1941, January 9, 1946, January 9, 1946); ordered the Recorder of Deeds of Allegheny County to cancel them of record; and further ordered that the costs of these proceedings be paid by plaintiff. The Court en banc likewise attempted to achieve substantial justice, and believing the defendants' testimony instead of plaintiff's testimony, cancelled the defendants' deed to plaintiff dated July 29, 1941, and dismissed the plaintiff's complaint.

In *Hartman v. Cohn,* 350 Pa. 41, 38 A. 2d 22, this Court, quoting from *Comstock v. Thompson,* 286 Pa. 457, 133 A. 638, said (page 47) : " 'Anyone going into a court of equity and asking its aid, whether that aid be such as could be obtained in a court of law, or whether it be of a character obtainable only in a court of equity, submits himself to the jurisdiction of the court, and, in asking its aid, subjects himself to the imposition of such terms as well established principles would require.' "

In view of our opinion that the Court en banc was not justified in overruling the findings of fact made by the trial Judge which involved the credibility of the witnesses, we believe that justice will be most nearly achieved by the following Order:

The Order and Judgment of the Court below is reversed and the Order of the Trial Judge dated December 29, 1950, is reinstated and affirmed.