Cowen, Appellant, *v.* Krasas et al., Appellants.

Argued November 13, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Marvin J. Levin,* with him *Freedman, Borowsky and Lorry,* for plaintiff.

*Arsen Kashkashian, Jr.,* with him *Kashkashian, Nissenbaum, Kellis & Pechter,* for defendants.

OPINION BY MR. JUSTICE EAGEN, April 22, 1970:

This is an appeal from a final decree entered in an action in equity instituted by Thomas Cowen against Peter Krasas and Peter Krasas, Jr. Cowen claimed that he was a partner with the defendants in the operation of a restaurant known as the Gaiety Luncheonette in Philadelphia. He sought an accounting from the defendants and a dissolution of the partnership. The defendants filed an answer to the complaint denying the existence of a partnership, and, as an alternative defense, asserted that if it were determined that the alleged partnership did in fact exist, then they were entitled to recover from the plaintiff a sum in excess of $5000, because of his failure to render any meaningful services to or on behalf of the partnership during its existence. Plaintiff replied that under the partnership agreement he was not required to actively participate in the operation of the business.

The case came on for trial and the chancellor, after hearing testimony, made the following relevant "findings", inter alia:

"1. Plaintiff and defendant, Peter Krasas, in the year 1960, entered into a partnership relationship with

respect to the business known as the Gaiety Luncheonette.

"2. Plaintiff and defendant, Peter Krasas, in the year 1965, entered into a contract whereby plaintiff sold his interest in the partnership business to defendant, Peter Krasas, for the sum of $2000.00.

. . . .

"5. Defendant's counterclaim against plaintiff is hereby dismissed."

Both sides to the litigation filed exceptions to the chancellor's "findings" and adjudication which were subsequently dismissed by the chancellor sitting as the *court en banc* [Pursuant to Philadelphia Local Rule C. P. *256(a)], and a final decree was entered. Both sides appealed here. Cowen contends that the lower court erred in finding that he entered into a contract in 1965 to sell his interest in the partnership. The defendants urge that the evidence was insufficient, as a matter of law, to establish or warrant the finding that a partnership ever existed.

The scope of our review is clear: A chancellor's findings of fact, when approved by the *court en banc,* have the force and effect of a jury verdict and will not be disturbed on appeal if supported by adequate evidence. *Stewart v. Watkins,* 427 Pa. 557, 235 A. 2d 604 (1967); *Girard Trust Bank v. Sweeney,* 426 Pa. 324, 231 A. 2d 407 (1967); and *Kalyvas v. Kalyvas,* 371 Pa. 371, 89 A. 2d 819 (1952). However, the chancellor's inferences and conclusions from the facts as found to exist are always subject to review (*Kemp v. Majestic Amusement Co.,* 427 Pa. 429, 234 A. 2d 846 (1967)), as well as his application of the law. The same standards control in those situations where the *court en banc* consists only of the chancellor himself [Pursuant to Philadelphia Local Rule C. P. *256(a)]. Especially is this so where, as here, the parties acquiesced in this procedure. *Jacobson & Co. v. Int. Environment Corp.,*

427 Pa. 439, 235 A. 2d 612 (1967). Our review of the record is persuasive that the evidence justified the chancellor in finding the following facts:

Defendant Peter Krasas was an unlettered man of Greek origin who had spent most of his life in the restaurant business. In 1960, Thomas Cowen was a college student engaged to be married to Peter Krasas' daughter. The relation between Cowen and the Krasas family was warm and friendly. In March 1960, Cowen advanced to Peter Krasas the sum of $5000 to be used to purchase the Gaiety Luncheonette, as well as to assist Krasas with his other financial obligations. The purchase price of the Gaiety was $23,500 and Cowen was given to understand that there would be an initial cash investment by the parties of $15,000. Cowen was to advance the sum of $5000 and Peter Krasas and Peter Krasas, Jr., the remaining $10,000, and each was to enjoy a 1/3 interest in the business. A further sum of $10,000 would be borrowed. However, the Krasases never advanced the $10,000 as *per* this understanding, but borrowed the sum of $23,500 from a finance company.

The purchase of the business was completed in May of 1960. From that time until March 1965, Cowen received payments nearly every month from the Krasas family in various sums totalling by Cowen's own estimation $21,478.28.

During this same period, Cowen and Peter Krasas' daughter "broke off" their engagement and subsequently both married other persons. Nevertheless, Cowen continued to receive periodic payments from the Krasases.

In May 1965, Cowen precipitated the present controversy by writing to the Krasases asking them to "give serious consideration to acquiring my interest in the restaurant." Krasas replied by tendering a $2000 check which he deemed a "fair amount to terminate the

agreement." This was unsatisfactory to Cowen and further negotiations proved fruitless.

As noted before, the lower court concluded that a partnership had been created between the parties in 1960, and Cowen had a 1/3 interest therein. The factual findings of the chancellor which were approved by the *court en banc* are supported by the record and are sufficient to warrant this conclusion, and we will not disturb it. While there was evidence to the contrary, it is not for us to pass upon the credibility of the witnesses. *Kalyvas v. Kalyvas,* supra. The existence or nonexistence of the partnership was primarily a matter of credibility.

The chancellor also determined that Cowen's letter of May 24, 1965, constituted an "offer" to sell his interest in the business "for whatever reasonable sum Krasas might put on it."

This conclusion was based solely on a reading of Cowen's letter. Thus, in interpreting such a writing and determining whether or not that writing constituted an offer, the chancellor was passing on a question of law. *Hanover Const. Co. v. Fehr,* 392 Pa. 199, 139 A. 2d 656 (1958); *Sheesley v. Bisbee Linseed Co.,* 337 Pa. 197, 10 A. 2d 401 (1940); *Meaker Galvanizing Co. v. McInnes & Co., Inc.,* 272 Pa. 561, 116 A. 400 (1922). His conclusion, therefore, is subject to our review, and we rule it was erroneous.

Cowen's letter of May 24th states in pertinent part:

"I would like you and Pete to give serious consideration to acquiring my interest in the restaurant. . . . [A]ny value that I would place on my share of the business would be only guesswork on my part. Therefore, I wish you and Pete would figure out what my share is worth. Any details involved can be worked out in any way that you see fit. . . . Again, if there are any details that you need from me please let me know. You have always been fair to me so I'll just leave the

money end of this up to you and Pete to decide. . . . I shall be awaiting your reply as to what you would like me to do."

The only thing that clearly appears from this initial overture is that Cowen was interested in selling his interest in the partnership to the Krasases. "Since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer." Williston on Contracts, Third Edition, Section 26, and cases cited therein; Restatement, Contracts, §25 (1932). It is true that Cowen's letter expressed a far greater degree of amenability than he subsequently manifested in his dealings with the Krasases. Yet, it is this very quality—this general interest in selling coupled with an open-mindedness as to price and any other terms— which preclude a determination that the letter constituted an offer. His letter was intended to do no more than to give notice of the fact that he was no longer interested in receiving periodic payments, but would prefer a lump sum final payment to terminate his interest in the partnership. "It is common for one who wishes to make a bargain to try *to induce the other party to the intended transaction to make the definite offer,* he himself suggesting with more or less definiteness the nature of the contract he is willing to enter into." Restatement, Contracts, §25, comment a (1932) [Emphasis supplied.]; *Upsal St. Realty Co. v. Rubin,* 326 Pa. 327, 192 A. 481 (1937); *Ingalls v. Green,* 337 Mass. 236, 76 N.E. 2d 658 (1948). This is an apt description of Cowen's letter. It was not a binding offer[1] to sell at any price.

---

[1] In reaching this conclusion, we need not pass on the reasonableness of the $2000 check sent by Krasas. However, we do note there was no evidence whatsoever introduced as to the reasonableness of the proffered sum. In fact, all the relevant evidence would

Since Cowen made no offer to sell and since Krasas' $2000 reply was not accepted by Cowen, no contract was ever formed for the sale of Cowen's interest.

We will remand so that a determination can be made on Cowen's request for an accounting and dissolution.[2]

Reversed and remanded.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the Decree of the lower Court.

I believe that Cowen, the plaintiff, in his letter to the defendants dated May 24, 1965, offered to sell his interest in the restaurant when he said (inter alia): "I would like you and Pete to give serious consideration to acquiring my interest in the restaurant. . . . Therefore, I wish you and Pete would figure out what my share is worth. Any details involved can be worked out in any way that you see fit. . . . You have always been fair to me so *I'll just leave the money end*

---

indicate that $2000 was not reasonable. It was $3000 less than Cowen's initial investment. Moreover, it was less than 1/2 of the average annual amount Cowen had received from Krasas in the form of periodic payments. Finally, there is an internal inconsistency in the chancellor's own adjudication: The chancellor initially determined that a partnership was created in which Cowen had a 1/3 interest. He further concluded (and there was ample evidence to support him) that the Gaiety had developed into a "thriving business." However, the conclusion of the syllogism, namely, that $2000 was a reasonable value for Cowen's 1/3 interest, is inconsistent with his major and minor premises. There is no doubt from the evidence adduced that the total value of the Gaiety was far in excess of $6000. Certainly, Cowen's 1/3 interest would exceed $2000.

[2] We find without merit the following statement made by the chancellor: "Basically, plaintiff is requesting this court to specifically enforce, by an affirmative decree, a partnership contract." When a partner (and the chancellor had already determined that Cowen was such) enters equity and petitions the court for an accounting and dissolution of the partnership, the relief he seeks is the very antithesis of specific performance.

*up to you and Pete to decide.\** . . . I shall be awaiting your reply as to what you would like me to do."

The Chancellor and the Court en banc found that defendant Peter Krasas, who was an unlettered man, accepted this offer by sending plaintiff a check for $2,000, which the lower Court found Krasas deemed "a fair amount to terminate the [partnership] agreement," and pay for plaintiff's share of the restaurant business. Contrary to the Majority's conclusion, I believe that, as a matter of law,\*\* this was an offer and an acceptance, and consequently a completed contract.

---

\* Italics, ours.

\*\* If any ambiguity existed, no oral evidence was introduced to explain the meaning of this letter and the aforesaid $2,000 payment by defendants. Furthermore, the Chancellor found as a fact as well as a conclusion of law that the parties considered and interpreted and treated these facts, until they subsequently fought, as an offer and an acceptance which plaintiff later sought to evade or repudiate.