Jenne, Appellant, *v.* Kennedy.

Argued October 8, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry M. Jones,* for appellant.

*Clyde P. Bailey,* with him *Weller, Wicks & Wallace,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 23, 1954:

The testimony in this case took an extremely wide range in depicting the lamentable dissensions existing between the two sisters who are plaintiff and defendant respectively. But when the underbrush is cleared away the only facts relevant to a decision are few and simple, and the applicable law is entirely clear and well established.

Plaintiff's bill of complaint alleged that on February 10, 1949, her mother, Mrs. Kirk, conveyed to defendant, plaintiff's sister, a two-story brick dwelling in the Borough of Edgeworth, Allegheny County, but that Mrs. Kirk had been induced to make the conveyance by fraud, the fraud consisting of the fact "that she was informed by the defendant and her husband that the conveyance was to be made solely for the purpose of effecting eviction of [the plaintiff]" from the premises in question. The bill further alleged that an agreement had been entered into between plaintiff and defendant that the property should be placed in the hands of a trustee and their mother removed to a nurs-

ing home, and that representatives of the parties were trying to effect such an arrangement at the time of the conveyance. It was further stated that Mrs. Kirk was 85 years of age, "and in a very feeble mental condition," that defendant, together with her husband, was in a position of confidential relationship with her mother, that Mrs. Kirk died April 18, 1949, leaving a will dated October 7, 1943, in which she had left her residuary estate to her grandson, David Kirk Quinby, plaintiff's son by a former marriage, and that he had assigned to plaintiff all his right, title and interest under the will. The bill prayed that the conveyance of Mrs. Kirk to defendant be declared null and void "on the ground of fraud, undue influence and a confidential relationship between the parties."

As already indicated, it would serve no useful purpose to rehearse the testimony so replete with criminations and recriminations between the parties; suffice it to say that it does not support any of plaintiff's contentions upon which she relies for the success of her action. The learned chancellor made findings of fact, affirmed by the court en banc, that at the time Mrs. Kirk executed the deed to defendant "she was mentally competent to do so, and appreciated the import of her act, which was voluntary, at her direction, and not induced by fraud, deceit, or coercion, nor undue influence on the part of the defendant or anyone else;" that "it was the intent of the grantor to make a gift of her residence property to her daughter as a natural object of her limited bounty"; and that "no confidential relationship in business affairs existed between the grantor and the grantee." And the court concluded that "the Plaintiff did not prove that the Defendant took the Deed under an oral agreement or understanding, whereby the Defendant became constructive trustee for the benefit of the grantor,"

or that "an oral agreement had been entered into between her [the Plaintiff] and the Defendant with respect to placing the property in the hands of a trustee for the purpose of raising funds to place their mother . . . in a nursing home." Accordingly the court dismissed the bill, and plaintiff now appeals from its decree.

We are in entire accord with the findings of fact and conclusions of law by the court below.

There is no evidence indicating, much less proving, that Mrs. Kirk was in such an impaired mental condition that she did not fully comprehend the import of her act in conveying the property to defendant. The two persons, wholly disinterested, who were present at the time of the execution of the deed and attached their names as witnesses, both testified that she was entirely normal and clearly expressed her desire to give the property to defendant. The notary public who took her acknowledgment interrogated her as to whether she understood what she was doing and he testified that "she was very attentive and spoke very nicely. She seemed to know what she was doing; otherwise I would not have gone along."

Nor is plaintiff's case any stronger on the question of the existence of a confidential relationship between defendant and her mother. Such a relationship may exist as a matter of law in certain recognized fiduciary relations, such as trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent, but as between a parent and child it is a question of fact to be established by the evidence. The mere existence of kinship does not, of itself, give rise to a confidential relation such as would impose the burden of proof on the one receiving a gift to assert its validity, and a child may take a gift from a parent without being required to furnish explanatory testi-

mony: *Leedom v. Palmer,* 274 Pa. 22, 25, 26, 117 A. 410, 412; *Null's Estate,* 302 Pa. 64, 68, 153 A. 137, 139; *McCown v. Fraser,* 327 Pa. 561, 564, 565, 192 A. 674, 676; *Fuller v. Fuller,* 372 Pa. 239, 246, 93 A. 2d 462, 466. There is nothing in the testimony in the present case to warrant any finding of confidential relationship, in the legal sense, between defendant and her mother. Defendant did testify that "we talked about most everything because no matter what happened it concerned both of us," and, as to business affairs, "sometimes she would take my advice; sometimes she wouldn't." It is perfectly natural that a mother and daughter would talk over matters of mutual concern, but this impoverished old mother certainly had no extended business affairs to be looked after, nor was there the slightest shred of testimony that she was overpowered, dominated, or unduly influenced in her judgments by this defendant. It might be added that, as the learned chancellor stated, the testimony offered on behalf of the defendant was of such quality that the defendant would have met the burden even if she *had* stood in a confidential relationship with the grantor.

This brings us to the question whether the property was given to defendant in trust, that is to say, subject to a fiduciary obligation either express or implied. There is not a word of testimony in the record of any trust expressly created by the grantor, nor of any oral promise made by the defendant to her mother whereby she accepted the property subject to any particular duty or obligation on her part which, in the light of their close kinship, might have made her a trustee ex maleficio.[1] Of course there may have been—in fact

---

[1] *Hatcher v. Hatcher,* 264 Pa. 105, 109, 110, 107 A. 660, 661; *Metzger v. Metzger,* 338 Pa. 564, 568, 569, 14 A. 2d 285, 287, 288; *Hamberg v. Barsky,* 355 Pa. 462, 464, 465, 50 A. 2d 345, 346.

in every gift there necessarily is—some motive which actuated the grantor in making the gift. Here plaintiff in her complaint alleged that the underlying purpose was to effect the eviction of plaintiff from the premises; by the testimony of her witnesses, however, she sought to establish a totally different purpose, namely, that the property was to be sold for the purpose of obtaining funds to enable Mrs. Kirk to move to Florida for the purpose of recuperating her health. No doubt this latter did constitute the *motive* for the gift; defendant herself testified that it was *her* object, in taking the property, to sell it and use the proceeds to take her mother to Florida. But this intention on *her* part did not find expression in any *promise* made by her, nor did she, as claimed by plaintiff, make any confession in her testimony that any such oral promise had been made, with the effect thereby of rendering it enforceable as a parol trust notwithstanding the statute of frauds.[2] In the absence of such a promise no trust ex maleficio could arise. There was some testimony that a social service agency thought that Mrs. Kirk would be better off in a nursing home and therefore that it would be advisable to sell the property and use the proceeds for her care in such a home. But while there was some informal discussion of such a plan it never, as the chancellor found, ripened into an agreement between the parties.

What former Chief Justice MAXEY said in *Jones v. Schaefer,* 357 Pa. 628, 637, 55 A. 2d 387, 391, bears

---

[2] *Kauffman v. Kauffman,* 266 Pa. 270, 275, 109 A. 640, 642.; *Metzger v. Metzger,* 338 Pa. 564, 571, 14 A. 2d 285, 288, 289; *Williams v. Moodhard,* 341 Pa. 273, 280, 281, 19 A. 2d 101, 104, 105; *Shaffer v. Shaffer,* 344 Pa. 158, 160, 161, 23 A. 2d 883, 885; *Zlotziver v. Zlotziver,* 355 Pa. 299, 302, 49 A. 2d 779, 781; *Kalyvas v. Kalyvas,* 371 Pa. 371, 381, 89 A. 2d 819, 824; *Martin v. Wilson,* 371 Pa. 529, 534, 92 A. 2d 193, 195.

constant repetition, namely, that "This court has frequently in its decisions manifested its respect for the integrity of written instruments, and such instruments are not to be set aside except upon convincing testimony that their execution was tainted with fraud, either actual or constructive, or that the person so executing them did not have what the law considers sufficient mental capacity to do so."

Plaintiff challenges the ruling of the court excluding plaintiff's husband as a witness on the ground that he was disqualified under the Act of May 23, 1887, P. L. 158. In fact the husband was allowed to give some testimony in rebuttal, but, since plaintiff herself was plainly disqualified,[3] her husband was likewise generally incompetent: *Weaver v. Welsh*, 325 Pa. 571, 578, 191 A. 3, 7.

In conclusion it may not be amiss to point out a question as to whether plaintiff, in any event, has any standing to seek a reconveyance of this property to Mrs. Kirk's estate. She does not represent the estate but claims only as an assignee of Quinby, to whom decedent willed her residuary estate. Any ultimate right, however, which Quinby might have in the property would, of course, be subject to the rights of creditors; indeed it appears in the testimony that plaintiff's husband himself claims to be a creditor of decedent to the extent of some $6,300 and has entered a judgment note in that amount allegedly signed by her;

---

[3] *Crothers v. Crothers*, 149 Pa. 201, 204, 205, 24 A. 190, 191; *Baldwin v. Stier*, 191 Pa. 432, 436, 437, 43 A. 326, 327; *Fiscus v. Fiscus*, 272 Pa. 326, 328, 329, 116 A. 293, 294; *Roberts v. Washington Trust Co.*, 313 Pa. 584, 590, 170 A. 291, 293; *King v. Lemmer*, 315 Pa. 254, 256, 173 A. 176, 177; *Gallagher v. Rogan*, 330 Pa. 545, 548, 549, 199 A. 168, 170; *Katz, Administratrix v. Lockman*, 356 Pa. 196, 200, 51 A. 2d 619, 621; *Long v. Long*, 361 Pa. 598, 601, 65 A. 2d 683, 684.

a proceeding is now pending on a petition which decedent had filed before her death seeking to open this judgment on the ground that the note was a forgery.

The decree dismissing the bill is affirmed at the cost of appellant.

Mr. Justice MUSMANNO dissents.