## Levering v. Lebanon National Bank

*C. R. Gingrich,* for plaintiff.

*C. Vincent Henry, Jr.,* for defendant-trustee.

*H. Rank Bickel, Jr.,* for defendant.

HESS, J., Specially Presiding, February 28, 1955.— Plaintiff, Harriet E. Levering (formerly Harriet E. Gipe), instituted procedings in equity against Lebanon National Bank, trustee, and Harry E. Gipe, remainderman, defendants, seeking to set aside and invalidate a deed of trust under which plaintiff was settlor. Testimony was taken before the Honorable A. Harry Ehrgood, President Judge, and a decree nisi was entered dismissing the bill. Exceptions were filed, and the writer was assigned specially to hear argument.

The facts are fully set forth in the opinion of the learned chancellor, and we deem it unnecessary to again mention them in great detail. Plaintiff was a legatee under the will of her grandfather, Harry Levan, and at the time of his death was a minor. Lebanon National Bank was appointed guardian to receive her distributive share. Upon attaining age 21, plaintiff executed a deed of trust naming Lebanon National Bank trustee, and providing for payment to her out of income the sum of $50 per month. The instrument provided further that any remaining income should be accumulated and "shall be available to the settlor upon her personal demand therefor".

The trustee was authorized to use in its discretion principal for the maintenance and support of settlor and to use principal for the purchase of a suitable residence, to be held as part of the trust estate, and to permit plaintiff and her family to reside in it. The trust was created irrevocably and upon the death of plaintiff, her father, defendant Harry S. Gipe, was named to take the remainder interest.

In her complaint plaintiff alleges that at the time she executed the trust instrument she had just attained age 21, was subject to frequent epileptic attacks and not possessed of sufficient mental capacity to understand the true meaning and legal significance of the instrument. She also contends that she did not understand that the trust was irrevocable, and that she was unduly influenced by defendant, Harry S. Gipe, to execute the deed of trust. Defendants denied the allegations of the complaint and defendant, Harry S. Gipe, also alleged laches as a defense to the action in equity. The chancellor, in effect, found that plaintiff did not lack mental capacity to execute the deed of trust, was not unduly influenced, was represented by counsel at the time the trust was set up, had full knowledge of all the facts, and ratified and confirmed the trust by availing herself of the benefits and provisions thereof, that the provisions of the trust were, under the circumstances, in the interest of plaintiff. The chancellor concluded as matters of law, among other things, that the relief prayed for cannot be granted because plaintiff is guilty of laches and that: "Under the law and the evidence, the burden of proving that the execution and delivery of her Deed of Trust was not the free, voluntary and intelligent act of the plaintiff, was on the plaintiff."

The exceptions raise the following questions:

1. Should the chancellor have disqualified himself from hearing and determining the issues in this case?

2. Did a confidential relationship exist between plaintiff, Harriet E. Levering, and defendant, Harry S. Gipe, and was there error in concluding that the burden of proof rested upon plaintiff?

3. If the burden of proof rested upon defendant, has that burden been met?

4. Can plaintiff be chargeable with laches?

1. Should the chancellor have disqualified himself from hearing and determining the issues in this case?

In view of the fact that the question of disqualification was not raised until after the learned chancellor filed his decision and decree nisi, we could without hesitation answer this question in the negative. We disapprove of the practice of waiting until a party has been the recipient of an unfavorable decision before he challenges the right of a judge to preside in a particular case: Brown v. Bahl, 111 Pa. Superior Ct. 598. It is the desire of all parties concerned, however, that the question be decided in accordance with existing law and precedents and we acquiesce in that desire.

Plaintiff, in her brief, mentions the question of a change in venue. We do not understand that such question is here involved, and the only issue concerns the matter of whether another judge should have been requested to preside at the hearing to take testimony and decide the issues. Plaintiff by her attorney contends that in view of the fact that the chancellor at the time the deed of trust was executed was a law partner of the late Clarence D. Becker, Esq., the attorney who is alleged to have prepared the trust instrument, and in view of the fact that two sons of the chancellor are members of the law firm which represented defendants in this case, the chancellor should have disqualified himself from hearing the matter. In advancing her contention, plaintiff over-

looks her own testimony, hearing of January 28, 1952, that she thinks Mr. Becker represented her at the time the deed of trust was executed. If such be a fact, it could scarcely be contended that by reason of being a law partner of Mr. Becker, the chancellor had any interest or relationship adverse to plaintiff. On the contrary, it would appear that defendant and not plaintiff should be concerned. In relation to the allegation of association of the chancellor's sons in the law firm that now represents defendants in this litigation, it does not appear that at any stage in these proceedings the sons of the chancellor were in any way connected with this case in their capacity as attorneys-at-law. H. Rank Bickel, Jr., Esq., at all times represented defendants, along with C. Vincent Henry, Jr., Esq., a member of another law firm.

Plaintiff has raised the question of disqualification by exceptions filed to the decision and decree nisi of the chancellor. In so doing, it would appear that the procedure adopted is improper. "The proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He may determine the question in the first instance, and ordinarily his disposition of it will not be disturbed unless there is an abuse of discretion": Crawford's Estate, 307 Pa. 102, 108. The reason for such procedure is self-evident in that it permits other parties to file answers after which a hearing can be held on the merits, and the facts either supporting or opposing disqualification can be made matters of record. In the case we are considering the only record supporting disqualification consists of statements made by plaintiff's attorney in the form of exceptions and they are not supported by affidavit.

Various acts of the General Assembly have set forth the circumstances under which a judge should

disqualify himself or grant a change of venue. Among them are the Act of April 15, 1834, P. L. 333, sec. 37; Act of March 18, 1840, P. L. 153; Act of April 2, 1860, P. L. 552; Act of May 1, 1861, P. L. 494. "These four acts have all been construed together as referring to cases to be tried at a special term of court, because the president judge, by reason of sickness of himself or his family, or his inability from any cause, or by reason of having been counsel, is unable to act or is disqualified from acting, and it is desirable to have another judge hold the regular term of court": Crawford's Estate, supra, page 106.

The Act of 1834, supra, sets forth specifically the circumstances under which such special court shall be held: ". . . I. Whenever the president judge of any of the said courts shall be personally interested in the event of any cause depending in any county of his district. II. Whenever the title under which the parties or either of them in any cause depending as aforesaid, shall have been derived from or through such president, or whenever the president shall hold under the same title with either of the parties in the cause. III. Whenever any near relative of the president judge of any of the said courts shall be a party to any cause depending as aforesaid, or interested in the event thereof. IV. Whenever the president judge of any of the said courts shall have been concerned as an attorney or counsel for either of the parties in any suit depending as aforesaid, or in any other cause touching the same subject matter, or for any other person under whom the said parties or either of them claim." None of the reasons enumerated would appear to be applicable in the case we are considering.

In the Act of April 22, 1856, P. L. 500, the legislature directed that when the president judge shall be a party, any action or suit "shall be tried and heard

before the president judge residing nearest the place of trial who shall be disinterested". The learned chancellor who heard the case now before us is not a party litigant in any sense of the word. In Cliff Estate, 51 D. & C. 445, it was decided that under the Act of 1856, supra, a judge, who while engaged in the practice of law, had been the scrivener and one of the subscribing witnesses to a will, is not disqualified from hearing an appeal from the probate of such will. Certainly a judge whose law partner had drawn a trust instrument which is now the subject of litigation, and whose sons are members of a law firm of which another member is representing a party in litigation, is not required under any of the legislation we have mentioned to disqualify himself from presiding at a hearing involving that particular litigation. We have carefully reëxamined the pronouncement of this court in Davenport v. Meyer, 4 Lebanon 185, upon this identical question and fully concur with the language and holding in that opinion.*

The requirements of the legislation we have mentioned cannot be understood as setting forth all of the circumstances under which a judge should undertake to disqualify himself. There may be any of a number of reasons sufficient to satisfy him that in the interest of justice to himself, to counsel and to the litigants he may conclude that another judge should be requested to preside in a particular case: Crawford's Estate, supra. A judge is free to make

---

* While it does not appear that the appellate courts of Pennsylvania have passed upon the question of the right of a son who is a lawyer to appear in a case before a judge who is the attorney's father, it has been decided in other States that such relationship without statutory prohibition or other circumstances does not render the judge subject to disqualification. See Callaham v. Childers, 186 Okla. 504, 99 P. 2d 126; State v. Standard Oil Co. of Louisiana, 164 La. 334, 113 SO. 867; Ex Parte Bowles, 164 Md. 318, 165 Atl. 169; In re Wunsch's Estate, 177 Minn. 169, 225 N. W. 109.

such decision upon his own initiative. Counsel are entitled to petition for disqualification upon cause shown. In this case we cannot conclude that any valid reason has been established warranting the chancellor to disqualify himself either on his own initiative or upon the request of any party in interest.

2. Did a confidential relationship exist between plaintiff, Harriet E. Levering, and defendant, Harry S. Gipe, and was there error in concluding that the burden of proof rested upon plaintiff?

A confidential relationship ". . . may exist as a matter of law in certain recognized fiduciary relations, such as trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent, but as between a parent and child it is a question of fact to be established by the evidence. The mere existence of kinship does not, of itself, give rise to a confidential relation . . .": Jenne v. Kennedy, 379 Pa. 555, 558.

"A confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest": Monongahela Trust Co. v. Kazimer, 161 Pa. Superior Ct. 380, 382. As between parent and child, the existence of a confidential relationship is a question of fact to be determined from the evidence and if the evidence establishes such relationship then the burden rests upon defendants in this case to prove capacity of plaintiff at the time she executed the deed of trust and to prove that she understood the meaning and significance of what she was doing: Lochinger v. Hanlon, 348 Pa. 29.

That case cites with approval the language of former Chief Justice Kephart in Weber v. Kline, 293 Pa. 85, 87: " 'Generally speaking, the burden of

showing both incapacity and an undue influence rests on those asserting the facts. *But this rule does not apply where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it.* Though there may be capacity to give, the law, nevertheless, casts this burden on the recipient. The factors which bring this rule into action are fraud, *confidential relation*, weakness of mind not otherwise incapable, and gross deception. *When these appear in the course of an investigation as to the validity of gifts, the burden of proof will immediately shift.'* "

The learned chancellor has found as facts that the elements set forth in the authorities cited have not been established in this case, and has concluded as a matter of law that the burden was on plaintiff to prove that the trust instrument was ". . . not the free, voluntary and intelligent act of the plaintiff, . . ." We concur in those findings. It would appear that for approximately 13 years after establishing the trust plaintiff received the benefit of the trust and appears to have been well satisfied with it. Only after she married did she indicate a change of attitude and seek to invalidate the trust. A careful reading of plaintiff's testimony convinces us that even now she complains only that her father is the remainderman and not her husband and that even though the trust provisions were changed, settlor would want the instrument to be irrevocable. Unfortunately, neither plaintiff nor the court can resort to "hindsight" in deciding the issues. We must consider the parties and the facts in the relation that they occupied on January 30, 1937, when the trust was created.

Shortly before January 30, 1937, plaintiff attained age 21, and was entitled to receive a large bequest.

Her mother was dead and she was living with and being provided for by her father, defendant. Plaintiff then was and thereafter has been subject to epileptic seizures, had not gone beyond the seventh grade in school, had little, if any, experience in business matters. By reason of her affliction, plaintiff apparently gave little thought to the question of marriage or a family of her own. To give a sum of money in excess of $22,000 outright to a young lady under such circumstances would certainly have exposed her to the devices and machinations of designing persons. It would appear that under the testimony, defendant-father, two able and experienced members of the bar, officials of defendant bank and plaintiff consulted together and planned for the future security of the young lady. The testimony leaves no doubt in our minds but that all parties were motivated by a desire to protect plaintiff and that she understood and approved of what was being done. Even the matter of making the trust irrevocable could be considered as being in her interest if the provisions of the trust are fair and just for plaintiff. Had the instrument been revocable, artful persons under the guise of friendship or marriage might have prevailed upon settlor to revoke the trust and make the corpus available to them.

The provisions of the trust appear to be exceedingly fair and considerate of the needs of plaintiff as such need existed on January 30, 1937, and in the foreseeable future thereafter. A monthly stipend of $50 was provided; all other income was made available to plaintiff; the trustee was authorized to use principal for plaintiff's maintenance and support, and to use principal for the purchase of a residence for plaintiff and her family. The commission or compensation to the trustee was restricted well below the usual compensation. It is true that the father-defendant was

named as remainderman, but at that time he was plaintiff's closest relative and was by law legally charged with his daughter's support if she could not provide for herself. Under the terms of the trust plaintiff might well utilize for her support and maintenance all of the income and principal during her own life and, conceivably, there may be no remainder to vest in anyone. At least, until the corpus is completely expended, there will be no question about her security.

We consider the testimony of plaintiff as to what took place when the trust was created as being vague and evasive. It would appear that one witness was approached by her and offered a sizable sum of money if that witness would testify favorably for plaintiff. There is no credible medical or other testimony to show that plaintiff was easily influenced or not possessed of sufficient mental capacity to comprehend the true meaning and effect of the trust instrument at the time she executed it, and did not understand that the trust was irrevocable. We are well satisfied that there are present no elements of overreaching, undue influence, mental incapacity or other factors which might establish a confidential relationship between the parties, thereby shifting the burden to defendants. We might well say as did the Supreme Court in Jenne v. Kennedy, supra, page 559: "It might be added that . . . , the testimony offered on behalf of the defendant was of such quality that the defendant would have met the burden even if she (they) *had* stood in a confidential relationship with the grantor."

Our determination makes it unnecessary to consider the remaining questions raised by the exceptions. We have concluded that the learned chancellor was not in error in deciding that the burden of proof remained

with plaintiff. We have clearly indicated, however, that had the burden shifted to defendants, we are well satisfied that such burden has been met. In the light of our conclusions, we need not discuss the question of possible laches in so far as plaintiff is concerned. We find no merit in the exceptions.

And now, to wit, February 28, 1955, the exceptions filed by plaintiff to the findings of fact, conclusions of law, decision and decree nisi of the chancellor are dismissed. Defendants may prepare and submit a final decree.